Thomas A. GOZDANOVIC, Plaintiff,

v.

The CIVIL SERVICE COMMISSION FOR the CITY OF PITTSBURGH, PA.,

and

Dr. Russell Scott—Consultant To the Civil Service Commission

and

Peter F. Flaherty, Mayor of the City of Pittsburgh, Defendants.

Civ. A. No. 73–164.

United States District Court,
W. D. Pennsylvania.

July 13, 1973.

J. K. Lewis, Lewis, Stockey & Daniels, Pittsburgh, Pa., for plaintiff.

Ralph Lynch, Jr., City Sol., Robert B. Smith, Asst. City Sol., Pittsburgh, Pa., for defendants.

## OPINION AND ORDER

MARSH, Chief Judge.

Thomas A. Gozdanovic, an unsuccessful civil service applicant for the position of a City of Pittsburgh police officer in 1966 and 1970, has brought this civil rights suit for damages and injunctive relief against the Civil Service Commission for the City of Pittsburgh, Dr. Russell Scott, and Mayor Peter F. Flaherty.[1] In his complaint, plaintiff alleges that jurisdiction is based upon "42 U.S.C.A. § 1981 et seq 28 U.S.C.A. § 1343 and the 14th Amendment of the United States Constitution." [2]

The defendants have moved to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) for lack of jurisdiction over the subject matter and failure to state a claim upon which relief can be granted; also that the causes of action are barred by the Statute of Limitations and by laches.

---

1. Appearances were entered by counsel for the City of Pittsburgh and for Dr. Russell Scott.

2. Since plaintiff does not allege any racial discrimination, §§ 1981 and 1982 are not applicable. Likewise inapplicable are §

1986, which relates to the refusal of persons with knowledge to prevent commission of wrongs proscribed by § 1985, and § 1984, which deals with Supreme Court review of decisions under the Civil Rights Act. It is evident that plaintiff's action is based on §§ 1983 and 1985.

In our opinion the motion to dismiss should be granted.

The complaint alleges that in September, 1966, the plaintiff applied to the Pittsburgh Police Department for employment as a police officer; he submitted his application to the defendant, Civil Service Commission, and took physical and mental tests, including psychological tests. His application was rejected as a result of the psychological tests in that certain psychological deficiencies were allegedly reported.

The plaintiff in August, 1970, again applied and underwent the same procedures for employment as a police officer and again he was rejected because the psychological test results were unfavorable. The plaintiff immediately consulted Dr. John J. Guhel, a psychiatrist, who found that the plaintiff was mentally stable, suffered no psychological impairment, and was mentally and emotionally suited to work as a police officer. On October 10, 1970, Dr. Guhel notified the Secretary of the defendant Commission of the plaintiff's well-being. The Commission ignored the information forwarded by Dr. Guhel and refused to reevaluate plaintiff's application.

The plaintiff concludes that the failure of the Commission to reevaluate plaintiff's application demonstrated an arbitrary and discriminatory attitude toward plaintiff's application and violated his civil rights guaranteeing a fair and adequate opportunity for employment. He further concludes that the Commission has unlawfully denied to him an opportunity for employment with the Pittsburgh Police Department by rejecting his application on the basis of certain psychological testing procedures which have no objective criteria upon which the Commission could accept or reject an applicant.[3] He further concludes that his application was unlawfully rejected because the Commission failed to consult a psychiatrist for the purpose of reviewing and evaluating plaintiff's emotional fitness as a police officer, and that this failure denied the plaintiff his right to a fair and adequate evaluation of his application. He further concludes that the Commission had recommended applicants less qualified than the plaintiff on the basis of these inadequate testing procedures and thereby unlawfully discriminated against the plaintiff.[4] He finally concludes that the failure of the Commission to provide a review of certain test results has wrongfully excluded certain classes of persons who are qualified for civil service positions as police officers and that the plaintiff is one of these persons.[5]

The plaintiff avers that the defendant Scott, in his position as consulting psychologist, did act in concert with the Commission by reporting the plaintiff's psychological test results as being conclusive of plaintiff's unfitness to work as a police officer, and that the defendant Peter F. Flaherty, Mayor of the City of Pittsburgh, is partially or wholly responsible for permitting the Commission to operate pursuant to these discriminatory procedures, and has violated the plaintiff's right to have an equal opportunity to obtain a position as a police officer.

Plaintiff alleges that he has suffered injury because of the discrimination carried on by the defendants in the following particulars:

"(a) He has been precluded from obtaining employment as a police officer in the City of Pittsburgh.

"(b) The Plaintiff has been subject to embarrassment in that he was rejected from a position that he was qualified for.

---

3. None of the psychological tests are specified.

4. None of the less qualified applicants are identified.

5. The plaintiff has not requested an order that the case proceed as a class action under Rule 23, Fed.R.Civ.P. Moreover, the "certain classes of persons qualified for Civil Service positions as police officers" are not identified by names or by numbers, or by race, color, or religion. There is no showing that there are any other persons similarly situated.

"(c) That the Plaintiff has been the victim of discrimination and has been denied his civil right to be fairly and justly considered for a position as a police officer in the City of Pittsburgh."

The plaintiff requests:

1. That an injunction issue against the defendants to terminate the psychological testing procedures and to substitute some objective standard by which the defendants accept or reject applicants for the police force.

2. That an injunction issue compelling the Commission to employ a qualified psychiatrist to review any psychological test results of any applicant who has been rejected because of negative test results.

3. That the plaintiff's application for employment as a police officer for the City of Pittsburgh be fairly and adequately reviewed by a competent psychiatrist to determine whether or not the test results upon which the plaintiff's application was refused were fair and objective.

4. The plaintiff requests an award in the sum of $50,000 for damages suffered by him as a result of the defendants' acts.

■ It is apparent that many of the allegations of the complaint lack the factual specificity required to support a cause of action under the Civil Rights Act. A Civil Rights Act complaint should set forth with specificity the acts and conduct of the defendants which worked an infringement of civil rights which will permit an informed ruling whether the wrong complained of is of federal cognizance.[6]

■ The plaintiff alleges that the defendant, The Civil Service Commission for the City of Pittsburgh, is an administrative agency which functions pursuant to the powers vested in it by the Commonwealth of Pennsylvania. Paragraph 2 of the complaint identifies by names the members of the Civil Service Commission and states that they "are being sued collectively in their official capacity as a commission." The caption does not list the individual members of the Commission as defendants; neither has any member been served with process as an individual; nor has any member entered an appearance in person or by counsel.

In his brief, plaintiff states:

" * * * Plaintiff maintains this action is for equitable relief primarily and, therefore, the Commission is a 'person' * * * and as a consequence, the members need not be sued individually."

We hold that the members of the Civil Service Commission have not been sued as individuals and are not parties in this case.

■ The Civil Rights Act prescribes two elements as requisite for recovery: (1) The conduct complained of must have been done by some person acting under color of state or local law; and (2) such conduct must have subjected the plaintiff to a deprivation of rights, privileges or immunities secured to him by the Constitution and laws of the United States. The plaintiff has not met either requirement in his claim for damages. The Commission is not a person, and this court does not have jurisdiction under the Civil Rights Act to entertain a suit for damages against it. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); United States ex rel. Gittlemacker v. County of Philadelphia, 413 F.2d 84 (3d Cir. 1969); Meachem v. City of Philadelphia, 346 F.Supp. 885 (E.D.Pa.1972).

---

6. Snowden v. Hughes, 321 U.S. 1, 7, 10, 64 S.Ct. 397, 88 L.Ed. 497 (1943); Gittlemacker v. Prasse, 428 F.2d 1, 3 (3d Cir. 1970); Kauffman v. Moss, 420 F.2d 1270, 1275 (3d Cir. 1970); Rodes v. Municipal Authority of the Borough of Milford, 409 F.2d 16, 17 (3d Cir. 1969); Pusateri v. Johnston, 398 F.2d 327 (3d Cir. 1968); Negrich v. Hohn, 379 F.2d 213 (3d Cir. 1967); United States ex rel. Hoge v. Bolsinger, 311 F. 2d 215 (3d Cir. 1962); Pugliano v. Staziak, 231 F.Supp. 347 (W.D.Pa.1964), affd. 345 F.2d 797 (3d Cir. 1965).

Since the Commission is not a proper party to the claim for damages, Dr. Scott cannot be liable on the conclusory allegation that he acted in concert with the Commission as distinguished from the members of the Commission who are not parties defendant. Likewise, Mayor Flaherty cannot be liable on the conclusory allegation that he is partially or wholly responsible for the acts of the Commission.

However, it appears that the Commission, as such, is a "person" within the Civil Rights Act for purposes of injunctive relief. Garren v. City of Winston-Salem, North Carolina, 439 F. 2d 140 (4th Cir. 1971); Meachem v. City of Philadelphia, *supra*. We point out hereafter that the Commission did not violate plaintiff's rights to due process and equal protection, and that his request for injunctive relief cannot be granted.

### Due Process

The Pennsylvania Civil Service Act, 53 Purdon's Pa.Stat.Ann. § 23431 et seq., at § 23442, provides:

" * * * If any applicant feels himself aggrieved by the action of the commission in refusing to examine him, or, after an examination, to certify him as an eligible, as provided in this section, the commission shall, *at the request of such applicant,* appoint a time and place for a public hearing; at which time such applicant may appear, by himself or counsel, or both, and the commission shall then review its refusal to make such examination or certification, and testimony shall be taken. The commission shall subpoena, at the expense of the applicant, any competent witnesses requested by him. After such review, the commission shall file the testimony taken, in its records, and shall again make a decision, which shall be final." (Emphasis supplied.)

Another section, 53 Purdon's Pa.Stat. Ann. § 604, provides for an appeal to the Court of Common Pleas from an adverse decision by the Civil Service Commission. In the light of these explicit state rights to review, the allegations of plaintiff's complaint to the effect that Dr. Guhel "reported" his findings to the Commission are insufficient to establish that plaintiff himself ever demanded a hearing. Under the quoted statute only the plaintiff could request a public hearing. Under the facts alleged it cannot be presumed that a hearing was requested by, and denied to, plaintiff. We find no denial of procedural due process or any other federally secured right.

Moreover, it is to be observed that the Pennsylvania two-year Statute of Limitations is applicable to civil rights actions. The complaint was filed on February 26, 1973, and all the factual allegations therein occurred prior to February 26, 1971. Civil and equitable relief sought for events occurring prior to February 26, 1971 is barred. Henig v. Odorioso, 385 F.2d 491 (3d Cir. 1967), citing P.L.E. Limitation of Actions §§ 31, 32.

Although plaintiff never requested the Commission for a public hearing, by his complaint he now requests this court to order the defendants to terminate psychological testing and compel the defendants to employ a qualified psychiatrist to review psychological test results of "any applicant" who has been rejected because of negative test results. He also requests that his application(s) (presumably of 1966 and 1970) be reviewed by a competent psychiatrist to determine whether or not the test results upon which the plaintiff's application(s) was refused were fair and equitable. No case has been cited which authorizes this type of injunctive relief in the circumstances of this case. Plaintiff has never been refused a public hearing. Only the non-existent right to employment as a police officer has been affected by the action of the Commission. No underlying right, privilege or immunity guaranteed by the Constitution, or proved retribution for exercising constitutionally protected rights, has been alleged.

Thus, no such injunctive action is constitutionally required when public employment is denied, or even withdrawn. *Cf.* Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Chism v. Price, 457 F.2d 1037 (9th Cir. 1972); Hodgin v. Noland, 435 F.2d 859 (4th Cir. 1970); Jones v. Hopper, 410 F.2d 1323 (10th Cir. 1969); Birnbaum v. Trussell, 371 F.2d 672 (2d Cir. 1966).

### Equal Protection

Nor do we think that plaintiff's allegation that the offending psychological test has "no objective criteria upon which said Commission can accept or reject an applicant" is sufficient to state a cause of action for the injunctive relief he seeks under the Civil Rights Act and the Fourteenth Amendment.

The Pennsylvania Civil Service Act at 53 Purdon's Pa.Stat.Ann. § 23441 provides that:

> "All examinations for positions in the classified service shall be practical in their character, and shall relate to such matters, and include such inquiries, as will fairly and fully test the comparative merit and fitness of the persons examined to discharge the duties of the office or employment sought by them."

█ Clearly, the Pennsylvania Civil Service Act requires that civil service tests objectively measure an applicant's fitness for the particular job he is applying for, and if the psychological test administered by the Commission fails to measure an applicant's fitness, then the Commission is acting dehors the law. Accordingly, it would be the Commission's actions, not the requirements of the law, which would be violating the plaintiff's rights. In such circumstances, absent an allegation of racial or other invidious discrimination, it must be alleged that the Commission is intentionally and purposefully discriminating against the applicant rejected on the results of the psychological test. As was said in Snowden v. Hughes, 321 U. S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944):

> "But not every denial of a right conferred by state law involves a denial of the equal protection of the laws, even though the denial of the right to one person may operate to confer it on another. Where, as here, a statute requires official action discriminating between a successful and an unsuccessful candidate, the required action is not a denial of equal protection since the distinction between the successful and the unsuccessful candidate is based on a permissible classification. And where the official action purports to be in conformity to the statutory classification, an erroneous or mistaken performance of the statutory duty, although a violation of the statute, is not without more a denial of the equal protection of the laws.

> "The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination. This may appear on the face of the action taken with respect to a particular class of persons, *cf.* McFarland v. American Sugar Co., 241 U.S. 79, 86, 87 [36 S.Ct. 498, 501, 60 L.Ed. 899], or it may only be shown by extrinsic evidence showing a discriminatory design to favor one individual or class over another not to be inferred from the action itself. Yick Wo v. Hopkins, 118 U.S. 356, 373, 374 [6 S.Ct. 1064, 1072, 1073, 30 L.Ed. 220]. But a discriminatory purpose is not presumed, Tarrance v. Florida, 188 U.S. 519, 520 [23 S.Ct. 402, 403, 47 L.Ed. 572]; *there must be a showing of 'clear and intentional discrimination'*, Gundling v. Chicago, 177 U.S. 183, 186 [20 S.Ct. 633, 635, 44 L.Ed. 725]; see Ah Sin v. Wittman, 198 U.S. 500, 507–508 [25 S.Ct. 756, 758, 759, 49 L.Ed. 1142];

**510**

Bailey v. Alabama, 219 U.S. 219, 231 [31 S.Ct. 145, 147, 55 L.Ed. 191]." (Emphasis supplied.)

The failure of plaintiff to allege that the Commission has *intentionally and purposefully discriminated against him* requires that the complaint be dismissed as it fails to state a cause of action showing any infringement of plaintiff's rights under the equal protection clause. Shock v. Tester, 405 F.2d 852 (8th Cir. 1969); Powell v. Workmen's Compensation Bd. of State of New York, 327 F.2d 131 (2d Cir. 1964); *cf.* Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962).

An appropriate order will be entered.