Elmer Dave JONES, Jr., et al., Plaintiffs,

v.

UNITED GAS IMPROVEMENT CORPORATION et al., Defendants.

Civ. A. No. 73-2485.

United States District Court,
E. D. Pennsylvania.

Sept. 25, 1974.

As Amended Jan. 6, 1975.

**422**

Michael H. Cox, Philadelphia, Pa., Howard L. Schambelan, Philadelphia, Pa., for plaintiffs.

Mark S. Dichter, Richard P. Brown, Jr., Joseph I. Goldstein, Philadelphia, Pa., for defendant United Gas Improvement Corp.

Glenn V. Whitaker, Washington, D. C., Warren J. Borish, Philadelphia, Pa., for defendant Local Union 600.

Leon Ehrlich, Reading, Pa., for defendant System Council.

## MEMORANDUM AND ORDER

FOGEL, District Judge.

In this employment discrimination case, plaintiffs Elmer Dave Jones, Jr., Frank McCracken and the Puerto Rican Fraternity of Philadelphia (the Fraternity), allege racially prejudicial practices against black and Spanish-surnamed persons by defendants United Gas Improvement Corporation (UGI), Gas Fitter-Utility Employees Local Union No. 600, affiliated with the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL–CIO (Local 600), and System Council U–22 of the International Brotherhood of Electrical Workers (System Council U–22).

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII), the Civil Rights Act of 1870, 42 U.S.C. § 1981 (§ 1981), and the Civil Rights Act of 1871, 42 U.S.C. § 1983 (§ 1983), are alleged as the substantive bases for plaintiffs' action; jurisdiction is averred under 42 U.S.C. § 2000e–5(f), 28 U.S.C. § 1343(4), and 28 U.S.C. §§ 2201 and 2202.[1]

██ Defendant UGI has filed a motion to dismiss the complaint, and defendants Local 600 and System Council U–22 have filed motions to dismiss, or, in the alternative, seek summary judgment. When the matter first came before us for oral argument, we suggested that the parties review the litigation at that stage and attempt to simplify the issues without sacrificing any claim or defense they considered material to their respective positions. The parties did so and, as a result, plaintiffs have voluntarily withdrawn all claims against all defendants brought pursuant to § 1983, and all claims against Local 600 and System Council U–22 brought pursuant to Title VII. Thus, at this stage of the litigation, there remain Title VII claims against UGI only, and § 1981 claims against all defendants. The nature of the action, however, even as modified, produces certain common as well as individual defenses. Hence, to avoid unnecessary repetition of the contentions of the parties inter se, we will summarize

1. We note in passing that jurisdiction is not properly invoked under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. The Act merely creates an additional remedy available in the federal courts, and does not enlarge federal subject matter jurisdiction. Framlau Corporation v. Dembling, 360 F. Supp. 806, 808 (E.D.Pa.1973).

the issues before us for resolution at this juncture:[2]

1. The propriety of Jones' status as a plaintiff;

2. The propriety of McCracken's status as a plaintiff;

. 3. The standing of the Fraternity as a plaintiff;

4. The applicable statute of limitations in § 1981 actions;

5. The standing of all three plaintiffs to bring an action against Local 600 and System Council U–22.

We deal with these issues *seriatim*.

### 1. *The propriety of Jones' status as a plaintiff*

Defendants contend this Court lacks jurisdiction under Title VII because plaintiff Jones did not receive a valid "right to sue" letter before commencing his action.[3] In order to assess the force of this contention, we will briefly discuss the procedural history of Jones' claim of discrimination, before the Equal Employment Opportunity Commission (hereinafter the EEOC) and before this Court.

Jones was employed by UGI on or about October 21, 1970, and was discharged on July 6, 1971. The following day he filed a charge of discrimination with the EEOC alleging harassment by UGI supervisors and fellow employees because he was black, and asserting that "the Company's employment practices operate in such a manner as to limit the opportunities for Negroes in terms of hire, classification, promotional terms and other conditions of employment."[4] Neither Local 600 nor System Council U–22 was named in the charge. The Commission conducted an investigation, and prepared an administrative record, the contents of which are not before the Court at this time. Efforts at conciliation failed, and Jones by letter of September 29, 1973, and his attorney, by letter of October 1, 1973,[5] requested a right to sue letter from the District Office of the EEOC. The instant action was filed on November 1, 1973. On January 3, 1974, a right to sue letter was issued by the Acting District Director of the Philadelphia District Office of the EEOC, but not by any EEOC member or by any official with the Washington, D.C. office of the Agency.[6]

The following issues arise from these facts: (1) Does the subsequent issuance of the right to sue letter cure the jurisdictional defect which may have existed initially? (2) Was the Acting District Director of the Philadelphia office of the EEOC an official authorized to issue

2. System Council U–22 has also attacked the complaint for alleged failure to comply with the requirements of Rules 9(f) and 9(g) of the Federal Rules of Civil Procedure. Neither of these contentions merits extended discussion. With respect to the asserted failure to comply with Rule 9(f), we note that the Rule does not *require* specific allegations of place and time, but merely states that when such specific allegations are made, they are material, contrary to the general rule at common law. See Supreme Wine Co. v. Distributors of New England, Inc., 198 F.Supp. 318 (D.Mass.1961), and the discussion in 2A Moore's Federal Practice ¶ 9.-07. We are satisfied that time and place allegations in the complaint are more than adequate under the liberal concept of notice pleading under the Federal Rules. With respect to Rule 9(g), the complaint demands back pay, with interest, in an amount to be established at trial. Since the amount of back pay will depend on the class determina-

tion, should unlawful discrimination be proved, it is neither possible nor desirable to specify the exact amount in the complaint.

3. The disposition of the Title VII claim, of course, will not affect the claim under § 1981, since failure to satisfy the conditions precedent to bringing an action under Title VII does not create a jurisdictional barrier to a suit brought under § 1981. Young v. International Telephone and Telegraph, 438 F.2d 757, 763 (3d Cir. 1971).

4. "Charge of Discrimination", 7–7–71, attached as Exhibit A to the Complaint.

5. These letters are attached as Exhibits B and C to the Complaint. Apparently Jones' attorney made an additional written request to the Commission, which is not before the Court.

6. The right to sue letter is attached as Exhibit A to Plaintiffs' Memorandum Contra Defendants' * * * Motion to Dismiss.

a valid letter, irrespective of the date of issuance?

We deal first with the effect of agency action after institution of the suit.

■ There are two general prerequisites to maintenance of an action in the District Court pursuant to the provisions of Title VII. The first is timely filing of charges of employment discrimination with the EEOC, 42 U.S.C. § 2000e–5(e). The second is receipt of a right to sue letter from the EEOC, and institution of suit within the time period mandated by 42 U.S.C. § 2000e–5(f)(1). McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

It is clear that Jones' complied with the first of these conditions precedent, because he filed his complaint with the EEOC, claiming, *inter alia*, that his discharge by UGI was racially motivated, the day following termination of his employment.

■ With respect to the second prerequisite, courts have almost invariably held that action or inaction by the EEOC should not prejudice the right of an individual to a judicial determination of the merits of his claim of discrimination. McDonnell Douglas Corp. v. Green, *supra*, 411 U.S. at 799, Fekete v. U. S. Steel Corp., 424 F.2d 331 (3d Cir. 1970). Because the issuance of the right to sue letter is a ministerial act required both by the statute [7] and applicable regulations [8] and not one involving the exercise of discretion by the Commission, many federal courts have likewise held that the issuance of such a letter after the commencement of suit under Title VII cures the jurisdictional defect in the original complaint. Henderson v. Eastern Freight Ways, Inc., 460 F.2d 258, 260 (4th Cir. 1972); Dodge v. Giant Food, Inc., 3 EPD ¶ 8184 (D.D. C.1971); Stebbins v. Insurance Company of North America, 3 EPD ¶ 8168 (D.D.C.1970); Brush v. San Francisco Newspaper Printing Co., 315 F.Supp. 577 (N.D.Cal.1970). This conclusion is consistent with the fundamental principle in Title VII cases that procedural niceties should not be used as a wall to bar a claimant from a judicial hearing on the merits, particularly when he has complied in every respect with his obligations under the statute. In the instant case, Jones made not one, but several timely requests to the District Office for issuance of the letter; the responsibility for the delay lies exclusively with the EEOC. To deny Jones his day

---

7. 42 U.S.C. § 2000e–5(f)(1) provides, in pertinent part, that: [i]f a charge filed with the Commission * * * is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference [to a state or local enforcement agency], whichever is later, the Commission has not filed a civil action under this section * * * or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission * * * *shall so notify the person aggrieved* and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved * * *. (emphasis added).

8. 29 C.F.R. § 1601.25 provides as follows: In any instance in which the Commission is unable to obtain voluntary compliance as provided by Title VII, as amended, *it shall so notify* the respondent, the person filing a charge on behalf of the aggrieved person,

the aggrieved person or persons, and any State or local agency to which the charge has been previously deferred pursuant to § 1601.12 or § 1601.10. Notification to the aggrieved person shall include:
 (a) A copy of the charge.
 (b) A copy of the Commission's determination of reasonable cause.
 (c) Advice concerning his right to proceed in court under section 706f(1) of Title VII. (emphasis added).

With respect to the right of an aggrieved person to demand a right to sue letter, 29 C.F.R. § 1601.25b(c) provides as follows:

At any time after the expiration of one hundred and eighty (180) days from the date of the filing of a charge or upon dismissal of a charge at any stage of the proceedings, *an aggrieved person may demand in writing that a notice issue* pursuant to § 1601.25, and *the Commission shall promptly issue a notice*, and provide copies thereof and copies of the charge to all parties. (emphasis added).

in court under the circumstances of this case would violate even the most rudimentary concepts of fair play. Shaffield v. Northrop Aircraft Services, 373 F.Supp. 937, 940 (M.D.Ala.1974).

We are at a loss to understand why defendants even advanced the second argument, one superficially fraught with subtlety, but actually permeated with error, factually and legally. In essence, their contention runs as follows: The statute, and applicable regulations, require that the Commission notify the aggrieved person of his right to sue. In the present case, however, Jones received his right to sue letter from the Acting District Director of the Philadelphia District Office of the EEOC. Defendants admit that such a ministerial act can properly be delegated by the EEOC to its agents, but they note that one court has determined that the delegation to the District Director may have violated certain provisions of the Freedom of Information Act, 5 U.S.C. § 552, in that the "administrative staff manual" which contained the delegation directive was marked "Administratively Restricted". McDonald v. General Mills, Inc., 7 FEP Cases 66 (E.D.Cal.1974). Since the authority to issue right to sue letters may have been improperly delegated, defendants tell us, any right to sue letter issued by a District Director is invalid, and therefore cannot satisfy the statutory requirement which is a prerequisite to suit in the federal courts.

Even on their chosen procedural ground defendants must meet defeat, because they have conveniently ignored corrective regulations subsequently promulgated by EEOC. As the Court pointed out in Shaffield v. Northrop Aircraft Services, supra, 7 FEP Cases at 466, the EEOC issued a new manual on May 21, 1973, which contained none of the objectionable features of the manual considered by the Court in McDonald. The new manual, however, failed to include a delegation to District Directors of the power to issue right to sue letters; this inadvertent omission was corrected by an amendment which became effective on November 28, 1973. Since the right to sue letter in the instant case was issued by the Acting District Director on January 3, 1974, it is clearly valid even under the holding in McDonald. Further, it is clear that even if the letter from the Acting District Director was invalid, the jurisdictional defect could be cured by the issuance of a new and valid right to sue letter. Henderson v. Eastern Freight Ways, Inc., supra, and cases cited.

By enacting Title VII, Congress did not intend to forge tools designed to barricade the doors of our federal courthouses with procedural blocks; to the contrary, the tools were designed to open those doors. We reject defendants' casuistry. Instead, we adopt the approach of the Court in Shaffield, supra, in carrying out the broad mandate of Congress that is reflected in this sweeping remedial legislation. We concur with Chief Judge Johnson when he said:

Not only is the suit letter a mere formality, but plaintiff in this case followed every step expected of him. After having filed a complaint with the EEOC, he obtained what everyone considered to be a valid suit letter and properly brought suit in this Court. Any fault certainly does not lie with plaintiff but with the EEOC, if with any party. Courts have been adamant in refusing to penalize Title VII plaintiffs for wrongs or mistakes committed by the EEOC. * * *

\* \* \* \* \* \*

After an aggrieved person, such as plaintiff in this case, has filed a charge and obtained his suit letter from the EEOC, he has done all that is expected of him prior to bringing suit. He has carried every burden which Title VII requires him to carry prior to suing in the district court. No party has cited a decision directly in point on this issue and presumably there is none. This Court is convinced, however, that under the facts of this case the inadvertent error of the EEOC, upon which no party has

426

relied to his detriment, does not constitute a defect in the jurisdiction of this Court over this case. Plaintiff's case will be considered upon the merits. 373 F.Supp. at 940 (footnote omitted).

See also Judge Schnacke's opinion in Stone v. E. D. S. Federal Corp., 351 F. Supp. 340 (N.D.Cal.1972).

We conclude, therefore, that there is no jurisdictional impediment to plaintiff Jones' maintenance of his suit in this Court pursuant to the provisions of Title VII.

## 2. *The propriety of McCracken's status as a plaintiff*

█ As to plaintiff McCracken, defendants argue that he cannot maintain an action as a named plaintiff because he did not file charges with the EEOC; they concede, however, that he could properly be a class member should the Court determine that Jones is an adequate class representative.

It is difficult to perceive any practical importance in determining this point, in light of our disposition of the remaining issues in the case, because McCracken's claim under § 1981 would remain viable even if we held that he was barred jurisdictionally under Title VII. Moreover, since Jones' claim under Title VII will not be dismissed, the case will proceed with McCracken as a named plaintiff or as a class member.

Nevertheless, defendants have raised the issue and we will decide it. McCracken may continue as a named plaintiff in this action. The Court of Appeals for the Fifth Circuit faced a similar problem in Oatis v. Crown Zellerbach Corporation, 398 F.2d 496, 499 (5th Cir. 1968), and stated the following in upholding the right of persons situated similarly to McCracken to appear as co-plaintiffs in Title VII Actions:

Additionally, it is not necessary that members of the class bring a charge with the EEOC as a prerequisite to joining . . . in the litigation. It is sufficient that they are in a class and assert the same or some of the issues. This emphasizes the reason for Oatis, Johnson and Young to appear as co-plaintiffs. They were each employed in a separate department of the plant. They were representative of their respective departments, as Hill was of his, in the class action. They, as co-plaintiffs, must proceed however, within the periphery of the issues which Hill could assert. Under Rule 23(a) they would be representatives of the class consisting of the Negro employees in their departments so as to fairly and adequately protect their interests. This follows from the fact that due to the inapplicability of some of the issues to all members of the class, the proceeding might be facilitated by the use of subclasses. In such event one or more of the co-plaintiffs might represent a subclass. It was error, therefore, to dismiss appellants. They should have been permitted to remain in the case as plaintiffs but with their participation limited to issues asserted by Hill.

In the instant case, McCracken was employed as a clerk, while Jones was an electronics maintenance technician; it also appears that the men were employed at different UGI facilities. Thus, under the Court's holding in Oatis, it is possible that they may be representatives of different subclasses within the Company.

Although McCracken will be permitted to remain as a named plaintiff in the Title VII claim, he may only raise those issues which were the subject of Jones' complaint to the EEOC. Oatis v. Crown Zellerbach Corporation, *supra*, 398 F.2d at 499.

## 3. *The standing of the Puerto Rican Fraternity as a plaintiff*

A much more difficult problem is posed by the presence of the Fraternity as a plaintiff in this action. Defendants raise several objections under both Title VII and § 1981, but we find it necessary to discuss only one aspect of the problem; namely, the standing of the Fraternity to litigate claims of employment discrimination against these defendants.

The Fraternity is described in the complaint as:

a non-profit corporation organized and incorporated under the laws of the Commonwealth of Pennsylvania. The Fraternity has its business offices in Philadelphia and exists solely for the advancement of the equal rights of Spanish-Speaking Americans, one of which is the right to equal employment opportunity.[9]

The complaint does not allege that members of the Fraternity have been subjected to discriminatory treatment by any of the defendants, nor that the organization has itself suffered injury as a result of alleged discrimination. The only statement even tangentially suggesting any injury to the Fraternity is not found in the complaint, but in one of the briefs submitted by plaintiffs. That brief states that the Fraternity is not able to make job referrals to the Company, thus decreasing the usefulness of the organization to the Spanish-speaking community, and making it more difficult to attract clients and members.[10]

The Court of Appeals for the Third Circuit faced a similar problem in the recent case of Erie Human Relations Commission v. Tullio, 493 F.2d 371, 375 (3d Cir. 1974), and held as follows (footnote omitted):

Appellants' last contention—that the district court erred in refusing to dismiss the Erie Human Relations Commission as a plaintiff for lack of standing—is meritorious. As the recent discussion of the subject by this court in Schiaffo v. Helstoski, 492 F. 2d 413 (3d Cir., filed Jan. 4, 1974) makes clear, to have standing a party must allege, at a minimum, a personal stake in the outcome of the action. In this case, the Erie Human Relations Commission has made no such allegation either for itself as a body or for its individual members. Instead, it seeks to bring this suit in its own name but on behalf of what it terms its "black clientele." Brief for Appellees at 5. This is improper. A party with no personal stake in the outcome of a case cannot establish standing to sue in federal court by alleging a concern for the rights of others, even if it is a body created by local ordinance for the express purpose of protecting those rights.

In a closely analogous case, the Detroit Edison litigation, the Court dismissed the "Association for the Betterment of Black Edison Employees", as a plaintiff on the ground that the organization lacked standing because the allegations were insufficient to establish that it had a personal stake in the outcome of the controversy. U. S. v. Detroit Edison Company, 365 F.Supp. 87, 91 (E.D.Mich.1973).[11]

9. Complaint, ¶ 6. The defendants have not challenged this characterization of the Fraternity.

10. Plaintiffs' Memorandum Contra Defendants' * * * Motions to Dismiss, at pages 20–21. Even here, there is no assertion that the Fraternity has actually referred clients or members to the company for potential employment.

11. The Court in the *Detroit Edison* also dismissed the organization on the ground that it was not a "person aggrieved" within the meaning of Title VII.

We do not necessarily endorse the view of the Court that an allegation of injury to the members of the organization, as distinct from the organization itself, is insufficient to establish standing. The Court of Appeals for the Third Circuit, in Erie Human Relations Commission v. Tullio, *supra*, 493 F.2d

at 375, suggests that standing may be established by an allegation of a personal stake in the controversy on the part of the organization "as a body or for its individual members". The Supreme Court, in the recent case of United States v. SCRAP, 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), held that an organization of law students had standing to challenge action taken by the ICC based upon allegations of non-economic injury to the members of the organization:

* * * [plaintiffs] point specifically to the allegations that *their members* used the forests, streams, mountains and other resources in the Washington Metropolitan Area for camping, hiking, fishing, and sightseeing, and that this use was disturbed by the adverse environmental impact caused by the nonuse of recyclable goods brought about by a rate increase on

428

In the instant case, we have searched the complaint in vain for an allegation of a personal stake in the controversy, either on the part of the Fraternity or of its members.[12] Because standing is to be determined from the pleadings, Sierra Club v. Morton, 405 U.S. 727, 735, n. 8, 92 S.Ct. 1361, 31 L. Ed.2d 636 (1972), Schiaffo v. Helstoski, 492 F.2d 413, 423 (3d Cir. 1974), we conclude that defendants are correct in their contention that the Fraternity must be dismissed as a party plaintiff in this action.

It may well be that this problem is merely a result of defective pleading,[13] and that the Fraternity or its members in fact suffer injury from the alleged employment practices set forth in the complaint. If so, plaintiffs are free to seek leave to amend the complaint by motion pursuant to Rule 15 of the Federal Rules of Civil Procedure. Sierra Club v. Morton, supra, 405 U.S. at 735, n. 8, 92 S.Ct. 1361. However, if facts cannot be adduced at this time to support such an amendment, they may seek such leave at a future stage of the litigation, should discovery elicit facts that support standing. At this juncture,

however, in ruling on a motion to dismiss, we are confined to the pleadings, and cannot construe fragmentary references in briefs or at oral argument as the equivalent of a well pleaded allegation in the complaint itself. In effect, plaintiffs would have us rule on the sufficiency of the complaint as it might have been drafted. This is obviously improper, and places the defendants, who have not been put on proper notice by the pleadings, at a grave disadvantage. We decline to rule on a hypothetical complaint, and limit ourselves to the one that is presently before us.

Accordingly, defendant's motion to dismiss the Puerto Rican Fraternity as a party is granted without prejudice to that organization's right to seek reentry into this litigation if it can establish a factual and legal basis for standing.[14]

### 4. The applicable statute of limitations in § 1981 actions [15]

§ 1981 does not contain a statutory period of limitations; hence, we must look to the most closely related State statute of limitations. Young v. International Telephone & Telegraph Co., 438 F.2d 757, 763 (3d Cir. 1971).[16]

---

those commodities. The District Court found these allegations sufficient to withstand a motion to dismiss. We agree. 412 U.S. at 685, 93 S.Ct. at 2415. (emphasis added). See also Judge Friendly's opinion in Aguayo v. Richardson, 473 F.2d 1090, 1099 (2d Cir. 1973).

In this case, however, the complaint alleges neither injury to members of the Fraternity, nor injury to the organization itself.

12. We are convinced that a catch-all, nonspecific allegation of injury to the organization's clients, without more, is insufficient to confer standing on the organization. Erie Human Relations Commission v. Tullio, supra, 493 F.2d at 375; see U. S. v. SCRAP, supra at note 11, in which the Court pinpointed the specific injuries alleged by the organization on behalf of its members.

13. See Professor Scott's analysis of the Sierra Club decision in Scott, Standing in the Supreme Court—A Functional Analysis, 86 Harv.L.Rev. 645, 667 (1973).

14. We do not intend to understate the obstacles which may remain even if the standing

problem is resolved favorably to the Fraternity should leave to amend be granted at some future time. We merely note that the Fraternity's status as a plaintiff has been challenged on additional grounds which do not directly raise the standing issue. See e. g. the Court's decision in Detroit Edison, supra, in which the "Association for the Betterment of Black Edison Employees" was dismissed as a plaintiff on the ground that it was not a "person aggrieved" within the meaning of Title VII. The applicability, if any, of § 1981 to the claim of discrimination against Spanish-surnamed employees has not been briefed by the parties.

15. See generally the excellent discussion in Larson, The Development of Section 1981 as a Remedy for Racial Discrimination in Private Employment, 7 Harv.Civ.Rights–Civ. Lib.L.Rev. 56, 76–83 (1972).

16. The federal statute of limitations applicable in Title VII actions is not applicable in actions brought pursuant to § 1981, since Title VII and § 1981 involve distinctly different governmental and judicial interests.

Defendants argue that the most closely related limitation period is that found in the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951 et seq. Section 959 provides that a complaint in the Pennsylvania Human Relations Commission must be filed within 90 days after an alleged act of discrimination occurs, a provision which is similar to the 180 day period established in Title VII, 42 U.S.C. § 2000e-5(e). Such a provision, however, is merely a protective limitation on the business of an administrative agency, see Young v. International Telephone & Telegraph Co., *supra* at 763, and is not analogous to the statute of limitations applicable in courts of law, particularly in cases in which federally guaranteed rights are sought to be protected.

The Court in Waters v. Wisconsin Steel Works of Int'l Harvester Co., 427 F.2d 476 (7th Cir. 1970), cert. den. 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151, considered and rejected a similar contention with respect to the applicability of the 120 day filing period required under the Illinois Fair Employment Practice Act in actions instituted pursuant to § 1981:

> The defendants make one final contention in arguing that the district court was correct in dismissing plaintiffs' claim against Local 21. They urge that plaintiffs' action under section 1981 is barred pursuant to 28 U.S.C. § 1652 [the Rules of Decision Act] and 42 U.S.C. § 1988 by the 120-day filing period for a discrimination claim under the Illinois Fair Employment Practices Act, Ill.Rev.Stat. ch. 48 § 851 *et seq.*, (1967). We disagree. Under those sections the statute of limitations applicable to civil rights actions is controlled by the statute of limitations which governs the most analogous state action. Jones v. Jones, 410 F.2d 365 (7th Cir. 1969). We are not convinced that the Illinois F.E.P.A. is the most analogous state

action under these provisions. The Illinois act provides only for an administrative remedy and review of the F.E.P.C.'s findings in the state courts. Different considerations obviously apply to suits by private litigants in courts of law. In contrast to the Illinois F.E.P.A., the entire burden of investigating and developing a case under section 1981 lies with the private litigant. Furthermore, the short limitations period contained in the Illinois act is designed to encourage conciliation and private settlement. When an aggrieved party seeks court relief, conciliation has generally failed. Accordingly, the appropriate limitations period in this case is governed by our recent decision in Baker v. F & F Investment, 420 F.2d 1191 (7th Cir. 1970). That case held that civil actions under section 1982 are subject to the five-year statute of limitations provided in Ill.Rev.Stat. ch. 83 § 16 (1967), governing civil actions not otherwise provided for. Since we see no difference between section 1981 and section 1982 for purposes of determining the appropriate statute of limitations, plaintiffs' action against Local 21 was timely filed. Waters v. Wisconsin Steel Works of Int'l Harvester Co., *supra* at 488.

We agree with the reasoning and approach of the Court in *Waters, supra*, and conclude that the same considerations should apply to the 90 day filing period required by the Pennsylvania Human Relations Act. We note, in particular, that the Pennsylvania act requires the Human Relations Commission to promptly investigate complaints, to resolve matters when possible by "conference, conciliation and persuasion", to hold hearings at which the case for the complainant is presented by attorneys or employees of the Commission, and to issue orders which are subject to court enforcement and review. The procedure clearly is administrative in nature, and

---

Young v. International Telephone and Telegraph Co., *supra* at 763; Sanders v. Dobbs Houses, Inc., 431 F.2d 1097, 1101 (5th Cir. 1970).

cannot be analogized to adversary proceedings instituted in a court of law only after all efforts at conciliation and administrative resolution of the dispute obviously have failed.

We therefore hold that the 90 day filing period established by the Pennsylvania Human Relations Act is not applicable in an action brought pursuant to 42 U.S.C. § 1981.

 Defendants next argue that the two-year statute of limitations applicable to personal injury actions should also apply in actions under § 1981. The two-year statute, which is found in 12 P.S. § 34, provides as follows:

§ 34. · Limitation in cases of personal injury

Every suit hereafter brought to recover damages for injury wrongfully done to the person, in case where the injury does not result in death, must be brought within two years from the time when the injury was done and not afterwards; in cases where the injury does result in death the limitation of action shall remain as now established by law. 1895, June 24, P.L. 236, § 2.

It is clear from the terms of the statute that § 34 does not create a general statute of limitations, nor even a statute which is applicable in all tort actions. The time frame set forth in § 34 is specifically limited to suits: (1) "brought to recover damages", (2) "for injury wrongfully done to the person", (3) "where the injury does not result in death". It is difficult to see how such personal injury actions are comparable to causes brought pursuant to § 1981, a federal statute which prohibits, *inter alia*, employment discrimination against non-whites, and which contemplates not only damages but extensive equitable relief as well.

We are aware that one Court has applied § 34 in a case which, although properly brought under 42 U.S.C. §§ 1983 and 1985, involved some elements of alleged non-racial employment discrimination. Gozdanovic v. Civil Serv. Com'n for City of Pittsburgh, Pa., 361 F.Supp. 504, 508 (W.D.Pa.1973). The Court in *Gozdanovic* concluded that "the Pennsylvania two-year Statute of Limitations is applicable to civil rights actions", *id.* at 508, citing Henig v. Odorioso, 385 F.2d 491 (3d Cir. 1967).

We must respectfully disagree with the conclusion in *Gozdanovic*, if that decision is read to mean that § 34 is applicable in *all* civil rights actions, regardless of their essential elements, and if *Henig* is cited in support of such a conclusion. *Henig* involved a series of claims pertaining to the arrest and incarceration of the minor plaintiff on charges of shoplifting. In discussing the statute of limitations applicable in actions brought pursuant to §§ 1983–1985, the Court noted, 385 F.2d at 493 (footnote omitted):

Since the Civil Rights Act contains no provision limiting the time within which an action thereunder may be brought, the applicable Statute of Limitations is that which the State would enforce had the action seeking similar relief been brought in State Court. Swan v. Board of Higher Education of City of New York, 319 F.2d 56 (2d Cir. 1963); Smith v. Cremins, 308 F.2d 187, 98 A.L.R.2d 1154 (9th Cir. 1962); Mohler v. Miller, 235 F.2d 153 (6th Cir. 1956). Under Pennsylvania law, the Statute of Limitations is one year for false arrest, slander, malicious prosecution and certain actions for false imprisonment. In addition, the general Statute of Limitations applicable to all actions to recover damages for injury wrongfully done to the person is two years. See P.L.E. Limitation of Actions §§ 31, 32. Therefore, any claims based upon the events occurring March 22 [the date of minor plaintiff's arrest], and March 23, 1962 [the date of her preliminary hearing], is barred by the applicable Statutes of Limitations. * * *

The passage quoted above does not support the proposition that the two

year statute is applicable in *all § 1983 actions,* nor the far more sweeping proposition that this statute is applicable in all actions brought pursuant to the federal civil rights acts. The Court in *Henig* was merely trying to catalogue the various elements of plaintiffs' claim —the arrest, imprisonment, damage to reputation, physical mistreatment while incarcerated, etc.—and to analyze these claims in terms of analogous state causes of action. The Court concluded that under *either* the one-year statute of limitations for false arrest and malicious prosecution (12 P.S. § 51) and for slander (12 P.S. §§ 31, 32), *or* the two-year statute for personal injury (12 P.S. § 34), certain of plaintiffs' claims were barred.

Unlike actions brought pursuant to § 1983, which often involve elements that are similar to state causes of action for personal injury, the complaint before us contains allegations of a pervasive system of employment discrimination. The relief sought includes not only damages but also sophisticated equitable remedies such as changes in hiring practices, job training, and seniority. To hold that this action with all of its ramifications is similar to a simple state tort action to recover damage for personal injuries does violence to the language and purpose of § 1981. When Congress left to the courts the task of selecting the state statute of limitations most closely related to the factual situation in a given § 1981 case, they granted this leeway to the courts in reliance upon even-handed decisions in choosing the appropriate statute of limitations to apply. Any other approach would result in an abuse of the discretion granted to the courts.

We conclude, therefore, that the correct state statute of limitations to apply in the instant action is the general six-year statute of limitations found in 12 P.S. § 31.[17] This conclusion is in accord with Waters v. Wisconsin Steel Works of Int'l Harvester Co., *supra,* 427 F.2d at 488, and with scholarly commentary.[18] Since the general six-year statute applies to contract actions as well as to torts, Sherwin v. Oil City National Bank, 18 F.R.D. 188 (W.D.Pa.1955), aff'd 229 F.2d 835 (3d Cir. 1956), it is applicable whether the § 1981 actions is analogous to a state action based on contract, Boudreaux v. Baton Rouge Marine Contracting Co., 437 F.2d 1011, 1017 (5th Cir. 1971), or to a state action sounding in tort.[19]

---

17. 12 P.S. § 31 provides as follows:

§ 31. Personal actions, when to be brought

All actions of trespass quare clausum fregit, all actions of detinue, trover and replevin, for taking away goods and cattle, all actions upon account and upon the case (other than such accounts as concern the trade of merchandise between merchant and merchant, their factors or servants), all actions of debt grounded upon any lending, or contract without specialty, all actions of debt, for arrearages of rent, except the proprietaries' quit-rents, and all actions of trespass, of assault, menace, battery, wounding and imprisonment, or any of them, which shall be sued or brought at any time after the five and twentieth day of April, which shall be in the year of our Lord one thousand seven hundred and thirteen, shall be commenced and sued within the time and limitation hereafter expressed, and not after; that is to say, the said actions upon the case, other than for slander, and the said actions for account, and the said actions for trespass, debt, detinue and replevin, for goods or cattle, and the said actions of trespass quare clausum fregit within three years after the said five and twentieth day of April next, or within six years next after the cause of such actions or suit, and not after. And the said actions of trespass, of assault, menace, battery, wounding, imprisonment, or any of them, within one year next after the said five and twentieth day of April next, or within two years next after the cause of such actions or suit, and not after; and the said actions upon the case for words, within one year next after the words spoken, and not after. 1713, March 27, 1 Sm.L. 76, § 1.

18. *See* Larson, *supra,* at 81.

19. The Courts have frequently held that interference with contractual relations and interference with prospective economic advantage may be tortious acts. *See* Prosser, Handbook of the Law of Torts (4th Ed.) §§ 129, 130. An action brought pursuant to § 1981, which guarantees the right to "make

Since there is no challenge to the allegations that Jones was employed by UGI from October 21, 1970, until July 6, 1971, and that McCracken was employed from approximately February until May of 1972, neither plaintiff is barred from pursuing his claim under § 1981 by the statute of limitations.

5. *The standing of plaintiffs to name the unions as defendants in this action*

Finally, Local 600 and System Council U–22 challenge the standing of all plaintiffs to name them as defendants in litigation under § 1981.[20] Since we have dismissed the Fraternity as a plaintiff in this action, *supra* at Part 3, we will discuss the standing problem with respect to Jones and McCracken only.

At the initial oral argument heard in connection with these motions, the Court held the matter under advisement pending discovery with respect to the Title VII and § 1981 claims against the unions. (Order of April 19, 1974.) As a result of this discovery, plaintiffs withdrew Title VII claims against Local 600 and System Council U–22. In connection with the remaining § 1981 claims against the unions, affidavits and copies of the respective collective bargaining agreements have been filed with the Court.[21] A review of those materials discloses these facts to be undisputed:

(1) Neither Jones nor McCracken has ever been a member of System Council U–22, I.B.E.W., or any of its locals, nor have they ever applied for membership in the Union.[22]

(2) Neither Jones nor McCracken has ever been hired into the bargaining unit covered by System Council U–22, nor, as far as defendants have been able to determine, has either plaintiff ever applied for a job within that bargaining unit.[23]

(3) Neither Jones nor McCracken has ever been a member of Local 600.[24]

(4) Neither Jones nor McCracken has ever been hired into the bargaining unit covered by Local 600, nor, as far as UGI can determine, has either plaintiff ever applied for a job within that bargaining unit.[25]

 Granted these undisputed facts, the union defendants argue that neither plaintiff could have suffered injury in fact from the racial discrimination with which the unions are charged, since neither has had any connection with the unions themselves nor with their designated bargaining units. Absent such injury in fact, they contend that this action against them must be dismissed. We agree.

The Supreme Court has frequently held that a party seeking to establish standing must allege "injury in fact" as a result of the defendants' actions. Sierra Club v. Morton, *supra*, 405 U.S. at 733; Data Processing Service v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d

and enforce contracts", is comparable in some respects to these common law actions.

20. As discussed *infra* plaintiffs have withdrawn all claims against the unions under Title VII. In this connection, we note that officers of each union have filed affidavits, uncontradicted by plaintiffs, stating that neither union received notice of the proceedings before the Commission involving Jones' charge against UGI, nor participated in any conciliation meetings undertaken at the Commission's direction. (Affidavits of Albert J. Heinecke, President of Local 600, and Andrew Makarchuk, Jr., President of System Council U–22.) UGI has confirmed that no formal notification of the Commission proceedings was given to either union, and that neither union participated in conciliation efforts. (Affidavit of George Westerman, Vice-President of Administrative Services, UGI Corporation, attached to the Supplemental Memorandum in Support of Local 600's Motion to Dismiss or in the Alternative for Summary Judgment.)

21. The Court is thus ruling on the alternative motions for summary judgment rather than on the motions to dismiss.

22. Makarchuk affidavit, *supra* at n. 20.

23. Makarchuk and Westerman affidavits, *supra* at n. 20.

24. Heinecke affidavit, *supra* at n. 20.

25. Heinecke and Westerman affidavits, *supra* at n. 20.

192 (1970).[26] Although the asserted injury may be very indirect and the line of causation from the defendant to the plaintiff exceedingly attenuated, United States v. SCRAP, *supra*, 412 U.S. at 688, 93 S.Ct. 2405, the requirement of *injury in fact* has never been abandoned by the Court. In an analogous case, Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 166–167, 92 S.Ct. 1965, 1968, 32 L.Ed.2d 627 (1972), the Court held that plaintiff Irvis did not have standing to challenge the membership requirements of the particular Moose Lodge since he had never attempted to become a member of that organization:

> Any injury to appellee from the conduct of Moose Lodge stemmed, not from the Lodge's membership requirements, but from its policies with respect to the serving of guests of members. Appellee has standing to seek redress for injuries done to him, but may not seek redress for injuries done to others. Virginian R. Co. v. System Federation No. 40, 300 U.S. 515, 558, 57 S.Ct. 592, 604, 81 L.Ed. 789, 805 (1937); Erie R. Co. v. Williams, 233 U.S. 685, 697, 34 S.Ct. 761, 763, 58 L. Ed. 1155, 1160 (1914). While this Court has held that in exceptional situations a concededly injured party may rely on the constitutional rights of a third party in obtaining relief, Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953), in this case appellee was not injured by

Moose Lodge's membership policy since he never sought to become a member. (footnote omitted).

In the instant case, it is undisputed that neither of the named plaintiffs was a member of Local 600 or System Council U–22, nor had either plaintiff ever applied for a job within the bargaining units represented by these unions. The only conceivable theory of injury that could be advanced by either plaintiff against the unions is one that is bottomed upon the assumption that he was in fact dissuaded or intimidated in such a manner as to convince him that even applying for a job within the bargaining unit would have been a futile act because of the open, known and notorious character of the discriminatory practices of the union.[27] Neither plaintiff, however, during any of the lengthy proceedings before this Court, has ever claimed that he was in fact dissuaded from seeking a job in the designated bargaining unit because he was conscious of such open, known and notorious racial discrimination by the unions. Indeed, it is clear that the existence of intimidation or dissuasion of this character would require plaintiffs to come forward and present facts to the Court in opposition to defendants' motions for summary judgment by affidavit or by any other means which clearly sets forth their factual contentions with specificity. Rule 56(e), Federal Rules of Civil Procedure.

---

26. *Sierra Club, Data Processing,* and *Barlow* involved judicial review of agency action under the provisions of the Administrative Procedure Act. The same standards apply, however, in cases which do not arise under the APA. Schiaffo v. Helstoski, *supra*, 492 F.2d at 422.

We do not intend to imply, of course, that injury in fact is the sole requirement of standing under the above cases: there is also the requirement that the alleged injury be arguably within the zone of interests to be protected or regulated by the pertinent statutes. In the absence of injury in fact, however, there is no need to reach the "zone of interests" test.

27. In this connection, we believe that the Supreme Court in *Moose Lodge* would have considered such intimidation or dissuasion as sufficient grounds for standing to challenge the organization's membership policies, had such a situation existed and had it been brought to the Court's attention. See Judge Bryan's opinion in Gonzales v. Fairfax Brewster School, Inc., 363 F.Supp. 1200, 1203 (E.D.Va.1973), a § 1981 case involving admission criteria to privately supported schools, in which relief was granted even though formal applications for admission had never been filed, because plaintiffs had been informed in telephone conversations that the schools did not accept black children, and formal application under these conditions would have been a futile gesture.

Plaintiffs' sole argument with respect to the standing issue raised by the unions is that provisions of the collective bargaining agreements between UGI and the unions, particularly those relating to seniority and written tests for employment, while facially neutral, serve to lock in and perpetuate discriminatory employment patterns. There is no doubt that such provisions may, under certain conditions, have a discriminatory effect; see Griggs v. Duke Power, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); United Papermakers and Paperworkers, Local 189 v. U. S., 416 F.2d 980 (5th Cir. 1969). This argument, however, avoids the standing issue completely; rather plaintiffs attempt to leapfrog that vital threshold question and reach the merits of the case without establishing their right to do so.[28] There is no question that a plaintiff with the requisite standing could challenge those provisions of the collective bargaining agreements. But a plaintiff who lacks standing will not be permitted to litigate the merits of the controversy, since in so doing he would be seeking redress for injuries done to others rather than to himself. Moose Lodge No. 107 v. Irvis, *supra*, 407 U.S. at 166.

We are satisfied, therefore, that neither Jones nor McCracken has the requisite standing, in his own right, to maintain the present action against Local 600 or System Council U–22.

One further question, however, remains for discussion: To what extent, if any, can these named plaintiffs improve their standing to sue the unions by means of the class action device permitted by Rule 23 of the Federal Rules of Civil Procedure?

In the class action allegations in the complaint, plaintiffs purport to bring this action "on behalf of all Black and Spanish-surnamed persons who have been employed, are employed, might be or might have been employed by defendant Company, and who have been, are, or might be represented by defendant labor organizations, who have been, continue to be, or might be adversely affected by the discriminatory practices alleged herein". It is possible that some members of a class so defined might have the requisite standing to sue Local 600 or System Council U–22. Based on this possibility, can plaintiffs, who lack standing in their own right, achieve derivative standing from hypothetical class members?

The short answer to such a question, of course, is that the Court has not determined, pursuant to Rule 23(c), whether the instant action may be maintained as a class action. While it is true that employment discrimination cases are frequently so maintained, and that the class action device may be the best means to resolve litigation which involves allegations of pervasive, systemic discrimination, Oatis v. Crown Zellerbach Corporation, *supra*, 398 F.2d at 498–499, there are many cases in which the requirements of Rules 23(a) and 23(b) are not met, and class action status is denied. See e. g., Causey v. Ford Motor Company, 382 F.Supp. 1221 (M.D. Fla.1974); Ayers v. Board of Education, 61 F.R.D. 414 (N.D.Miss.1973).

Moreover, if we determine that the litigation may proceed as a class action, we are certainly not bound to accept plaintiffs' contention as to the proper scope of the class. See e. g. Kinsey v. Legg, Mason & Co., 60 F.R.D. 91 (D.D. C.1973), in which the Court determined that plaintiff was not representative of a class that included applicants for positions in retail securities sales, institutional sales, and non-sales departments, because of the differences in qualifications, salaries, and duties of employees of these departments. The class was

**28.** We have carefully examined all of the cases cited in Plaintiffs' Supplemental Memorandum Contra the Defendants' Motions to Dismiss. In none of these cases was the standing issue before the Court.

limited to a group restricted to applicants for retail sales positions.[29]

Hence, it is possible that the case will not proceed as a class action, or that the Court will define the class so as to exclude employees within the bargaining units represented by Local 600 or System Council U–22. Such a determination, of course, must await proceedings pursuant to Rule 23, in which the burden will fall on plaintiffs to make a positive showing that the requirements of Rule 23 are satisfied. Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452, 457 (E.D.Pa.1968).

But aside from the question of class determination under Rule 23, the Supreme Court in the recent case of O'Shea v. Littleton, 414 U.S. 488, 94 S. Ct. 669, 38 L.Ed.2d 674 (January 15, 1974), has made it clear that if none of the named plaintiffs purporting to represent a class establishes the requisite standing to sue the defendants, none may seek relief on behalf of himself or any other member of the class. O'Shea v. Littleton was a class action instituted by 19 named plaintiffs in their own right and on behalf of a class of citizens of Cairo, Illinois, against the State's Attorney, his investigator, the police commissioner, and the Magistrate and Associate Judge of the Alexander County Circuit Court.

The Supreme Court concluded that none of the named plaintiffs had standing to sue two of the defendants, the Magistrate and the Associate Judge:

> * * * Moreover, if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class. Bailey v. Patterson, 369 U.S. 31, 32–33, 82 S.Ct. 549, 550–551, 7 L.Ed.2d 512 (1962); Indiana Employment Division v. Burney, 409 U.S. 540, 93 S.Ct. 883, 885, 35 L.Ed.2d 62 (1973). See 3B Moore's Federal Practice, ¶23.10–1, n. 8 (2d ed. 1971). In the complaint that began this action, the sole allegations of injury are that petitioners "have engaged in, and continue to engage in, a pattern and practice of conduct . . . all of which has deprived, and continues to deprive, plaintiffs and members of their class of their" constitutional rights and, again, that petitioners "have denied and continue to deny to plaintiffs and members of their class their constitutional rights" by illegal bond, sentencing, and jury fee practices. None of the named plaintiffs is identified as having himself suffered any injury in the manner specified. In sharp contrast to the claim for relief against the State's Attorney where specific instances of misconduct with respect to particular individuals are alleged, the claim against petitioners alleges injury in only the most general terms. * * *

> 414 U.S. at 494, 94 S.Ct. at 675, 38 L.Ed.2d at 682–683 (footnote omitted)

In the instant case, therefore, we conclude that plaintiffs, who lack standing in their own right to litigate claims against the defendant unions, may not acquire standing on the ground that some member of the class they purport to represent may possess the requisite standing.

Local 600 and System Council U–22 will therefore be dismissed as defendants in this action at this time.[30]

---

**29.** The Court subsequently determined that there were too few members of such a class to permit a class action under Rule 23. 60 F.R.D. at 99.

**30.** Plaintiffs have not discussed the question of joinder of the unions pursuant to the provisions of Rule 19 of the Federal Rules of Civil Procedure, on the ground that in their absence complete relief cannot be accorded. See e. g. Hodgson v. School Board, New Kensington-Arnold School District, 56 F.R.D. 393 (W.D.Pa.1972), in which the Court granted defendant's motion to join two unions and certain of their agents in an action arising under the Equal Pay Act, because the relief requested could involve altering and restructuring the compensation

Again, should facts elicited through discovery in the course of this litigation establish a basis for application to this Court to consider a motion for rejoinder of these two defendants, an appropriate motion should be filed and it will be decided upon the basis of the record as it then exists.

Accordingly, an Order will be entered (1) dismissing the Puerto Rican Fraternity as a plaintiff in this action, and (2) dismissing Local 600 and System Council U–22 as defendants. The case will go forward under both Title VII and § 1981, with Jones and McCracken as named plaintiffs, and UGI as sole remaining defendant, with the class determination to be made as soon as practicable pursuant to Rule 23(c) of the Federal Rules of Civil Procedure.

See also, D.C., 378 F.Supp. 430.

provisions of the collective bargaining agreements to which the unions were parties. In the instant case, however, plaintiffs have not established that they have suffered any injury in fact as a result of the provisions of the collective bargaining agreements to which Local 600 and System Council U–22 are parties, because there has been no allegation that either plaintiff was ever covered by these agreements, or was ever prevented or intimidated from making such application by any terms contained therein or by any action or failure to act on the part of any of the defendants. Under these circumstances, and in light of the class action limitations imposed by O'Shea v. Littleton, *supra*, and such cases as Causey v. Ford Motor Company, *supra*, (plaintiff must be a member of the class which he seeks to represent), it seems unlikely, at this juncture, that relief in this case would involve changes in the collective bargaining agreements between UGI and these unions. As discussed above, however, discovery may produce facts which would require a different conclusion.