Allen CLAIBORNE et al.

v.

**ILLINOIS CENTRAL RAILROAD, and the Brotherhood of Railway Carmen of the United States and Canada.**

George J. WESLEY et al.

v.

**ILLINOIS CENTRAL RAILROAD, and International Brotherhood of Firemen and Oilers, Helpers, Roundhouse and Railway Shop Laborers.**

**Civ. A. No. 70–2980.**

United States District Court,
E. D. Louisiana.

Oct. 16, 1975.

Steven R. Plotkin, Louis A. Gerdes, Jr., Thierry and Gerdes, New Orleans, La., for plaintiffs.

H. Martin Hunley, Jr., Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, La., Martin W. Fingerhut, Chicago, Ill., for defendant Illinois Central Railroad.

Victor H. Hess, Jr., Jackson & Hess, New Orleans, La., for defendant International Brotherhood of Firemen and Oilers, Helpers, Roundhouse and Railway Shop Laborers.

Donald W. Fisher, Mulholland, Hickey & Lyman, Toledo, Ohio, for defendant Brotherhood of Railway Carmen of the United States and Canada.

HEEBE, Chief Judge.

Defendant Illinois Central Railroad moves for a new trial and/or amendment of Findings of Fact and Conclusions of Law on the issue of punitive damages in this case, brought under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-5(g), and 42 U.S.C. § 1981. This Court has previously awarded plaintiffs $50,000 in punitive damages. We now confirm that decision for the reasons set out below.

There is a clear split in the authority as to whether punitive damages may be awarded in a Title VII employment discrimination case. The leading cases denying punitive damages are *EEOC v. Detroit Edison Co.*, 515 F.2d 301, 308 (6th Cir. 1975), petition for cert. filed, 44 U.S.L.W. 3139 (U.S. August 14, 1975), and *Van Hoomissen v. Xerox Corp.*, 368 F.Supp. 829 (N.D.Cal.1973). Cases suggesting they are appropriate include *Dessenberg v. American Metal Forming Co.*, 6 E.P.D. ¶ 8813 (N.D.Ohio 1973) and *Tooles v. Kellogg Co.*, 336 F.Supp. 14 (D.Neb.1972).

In *Van Hoomissen, supra,* Chief Judge Carter turned first to the legislative history of 42 U.S.C. § 2000e-5(g) to determine whether punitive damages were available. 368 F.Supp. 836-37. After a review of the legislative history,

we are unable to agree that it indicates punitive damages are unavailable. Congress never specifically considered the issue. Developments in the Law: Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv. L.Rev. 1109, 1262 (1971). Thus, we must agree with Judge Carter's initial statement that "the 1964 discussion in Congress regarding Section 2000e-5(g) is not terribly illuminating." 366 F.Supp. 836. The Senate analysis of the 1972 amendments to § 2000e-5(g) indicating Congress' attitude in 1972 is not much more explanatory.

"The provisions of this subsection are intended to give the courts wide discretion exercising their equitable powers to fashion the most complete relief possible. In dealing with the present section 706(g) [§ 2000e-5(g)] the courts have stressed that the scope of relief . . . is intended to make the victims of unlawful discrimination whole . . . (and restore them) to a position where they would have been were it not for the unlawful discrimination." 118 Cong. Rec. 3462.

There is no indication that punitive damages are unavailable. Indeed, punitive damages can play a useful role in making victims "whole" by providing compensation for intangibles, e. g., mental suffering. It must also be realized that the grant of seniority rights and back pay does not fully compensate victims because under the rightful place theory incumbent workers cannot be displaced. Punitive damages can provide additional relief for such uncompensated losses. We conclude that the sketchy legislative history of § 2000e-5(g) does not support the conclusion that punitive damages are unavailable.

The *Van Hoomissen* court also indicated that § 2000e-5(g) was modeled upon the National Labor Relations Act, 29 U.S.C. § 160(c), and that punitive damages are unavailable under that Act. 368 F.Supp. 837. With these proposi-tions there can be little dispute, but the key question which must be answered is whether the similarities between the two acts are such that decisions under one control the other.

■ The original conception of Title VII was that a federal agency with cease and desist powers similar to those of the National Labor Relations Board would enforce nondiscrimination. Comment, Enforcement of Fair Employment Under the Civil Rights Act of 1964, 32 U.Chi. L.Rev. 430, 432 (1965). As a result of a number of compromises, this idea was altered so that the Equal Employment Opportunity Commission had no enforcement powers and was restricted to mediation and conciliation. Private suits in federal court became the primary form of relief, though the Attorney General, and subsequently in 1972 the EEOC, was given the power to bring "pattern and practice" suits. 42 U.S.C. § 2000e-6. Congress, in denying cease and desist powers to the EEOC, rejected rather than adopted the NRLB scheme originally proposed. It is illogical to conclude from such Congressional action that Congress intended to limit Title VII remedies to those allowed under the N.L.R.A., 29 U.S.C. § 160(c), when it rejected the N.L.R.A. as a model for Title VII enforcement procedures. In fact, if any inference is to be drawn from this, it is that Congress did not intend Title VII to duplicate N.L.R.A. enforcement procedures and remedies.

Moreover, the aim of the N.L.R.A. was to establish a framework within which management and labor could resolve their conflicts, whether by collective bargaining or economic warfare, e. g., strikes and lock-outs. The N.L.R.A. was not meant to be outcome determinative, i. e., it was not to ensure that management or labor wins every conflict. It simply defined permissible methods of engaging in industrial conflict and sought to channel labor/management conflict into peaceful negotiations. Title VII is radically different. It seeks

tc end all employment discrimination. It does not define permissible methods of discrimination nor does it establish a framework allowing for employment discrimination. Its aim is to be outcome determinative and to see that employees who are discriminated against win every conflict.

Punitive damages under the N.L.R.A. are inappropriate because they would ony serve to exacerbate conflict between management and labor within the permissible sphere of industrial conflict, *i. e.,* strikes and lock-outs. The party assessed punitive damages could seek revenge in the next strike or be recalcitrant at the bargaining table. This would undermine the spirit of cooperation that is necessary for good-faith collective bargaining and the peaceful resolution of industrial conflicts. Such revenge seeking would be almost impossible to prove unless the party accused of it stated this was a reason for its action. Punitive damages might also create a sense of moral superiority in the side receiving them, discouraging that side from negotiating and avoiding strikes because it felt it was "right." Furthermore, punitive damages might permit the N.L.R.B. to destroy the equality of power between management and labor that Congress intended to create by the N.L.R.A. Note, Tort Remedies for Employment Discrimination Under Title VII, 54 Va.L.Rev. 491, 502 (1968).

No such dangers exist under Title VII. Employment discrimination is not negotiable so there is no negotiating process to undermine. Where there is employment discrimination, there is no equality of power to be maintained, since employment discrimination is absolutely prohibited. Finally, there is no permissible area of conflict where revenge for punitive damages might be sought. Indeed, the possibility of punitive damages under Title VII should encourage an end to employment discrimination, *infra.* Accordingly, the profoundly different aims of Title VII and the N.L.R.A.

should lead to a different, not similar, decision on punitive damages.

■ The final argument in *Van Hoomissen* against punitive damages is that Congress in 1968 adopted Title VIII dealing with fair housing and specifically provided for punitive damages. 42 U.S.C. § 3612 ($1,000 maximum). "When the 1972 amendments to Title VII were made, Title VIII was already law, yet no such parallel provision for punitive damages was included, even though *other amendments* to the remedies section were made." 368 F.Supp. 838–9 (their emphasis). Such reasoning by negative implication is not favored, especially where there is no indication that Congress considered Title VIII when it amended Title VII. *See,* Implying Punitive Damages in Employment Discrimination Cases, 9 Harv.Civ.Rights —Civ.Lib.L.Rev. 325, 342 (1974). Whether we assume that Congress in 1964 thought it made punitive damages available or unavailable under Title VII, there was no necessity to amend it in 1972. Since under either assumption Congress' action would have been the same, little can be inferred from its lack of action on punitive damages in 1972. Moreover, Title VIII is not closely related to Title VII, having been adopted in 1968, four years after Title VII was adopted and four years before it was amended, so there is no reason to believe that Congress intended one to affect the other. We, therefore, conclude that Title VIII provides no guide to the availability of punitive damages under Title VII.

■ ■ Turning now to the language of § 2000e-5(g), we find that:

". . . the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without backpay . . . or any other equitable relief as the court deems appropriate."

In *Detroit Edison,* supra, the Court relied on the principle of *ejusdem generis* to conclude that only equitable relief was available. However, we believe this principle must give way in the light of *S.E.C. v. Joiner Corp.,* 320 U.S. 344, 351, 64 S.Ct. 120, 123, 88 L.Ed.2d 88 (1943) (*ejusdem generis* and *expressio unius* must be "subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating purpose") and *Peyton v. Rowe,* 391 U.S. 54, 65, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1967) ("Remedial statutes should be liberally construed"). It was the intent of Congress to create "broad and effective remedies." Sape and Hart, Title VII Reconsidered: The Equal Employment Opportunity Act of 1972, 40 Geo.Wash.L.Rev. 824, 880 (1972). Since punitive damages would further the aims of Title VII by detering violations and by encouraging plaintiffs to seek relief by increasing their recovery, the implication of punitive damages will further the broad remedial effect that Congress intended under Title VII.

■ In *Detroit Edison, supra,* it is also argued that the award of punitive damages violates the constitutional right to trial by jury. However, punitive damages can be awarded by a *judge* in a proceeding for legal relief. *Swofford v. B & W, Inc.,* 336 F.2d 406, 411–14 (5th Cir. 1964), *cert. den.,* 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965); *Pan Amercian World Airways, Inc. v. Ramos,* 357 F.2d 341, 342 (1st Cir. 1966); *Kennedy v. Lakso Co.,* 414 F.2d 1249, 1254 (3rd Cir. 1964). Since the merger of law and equity there seems to be no reason that punitive damages cannot be awarded by a judge in an equitable proceeding. Accordingly, since the award of punitive damages does not require a jury trial under the Seventh Amendment, there is no constitutional barrier to the award of punitive damages by a judge in an equitable proceeding. Developments—Title VII, 84 Harv.L.Rev. 1269, *supra.*

■ Defendant ICRR signed the first pre-trial order of March 21, 1972, which governed the trial on liability, and it signed the second pre-trial order of December 5, 1973, which governed the trial on relief. Both of those orders provided for a non-jury trial. During the extended course of this litigation, which began in 1970, defendant ICRR never requested a jury trial. The cases and commentaries cited in this opinion, indicating the possibility of punitive damages, should have put ICRR on notice that such damages could be awarded. Even if we are in error in our holding that a jury trial was not required in this case, ICRR's failure ever to request a jury trial constituted a waiver. Federal Rule of Civil Procedure 38(b) and (d) requires an affirmative demand for jury trial within ten days of service of the last pleading directed to such issue. 5 Moore's Federal Practice 334 (1974).

■■ Section 1988 of 42 U.S.C. allows federal courts to apply state law when federal law is not sufficient to remedy or punish violations in civil rights cases. It has been suggested that 42 U.S.C. § 1988 provides a basis for punitive damages if they are available under state law. *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 240, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969); Tort Remedies, 54 Va.L.Rev. 499–501, *supra;* Implying Punitive Damages, 9 Harv.Civ. Rights—Civ.Lib.L.Rev. 349–351, *supra.* While we are inclined to agree with this argument, we need not decide it since punitive damages are unavailable in Louisiana. *Baggett v. Richardson,* 473 F.2d 863, 865 (5th Cir. 1973).

■ This case was also brought under 42 U.S.C. § 1981, which provides relief from employment discrimination. Our previous findings in this case support the conclusion that ICRR violated § 1981, as well as Title VII, and we so hold. Since *Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 20 L. Ed.2d 1189 (1968) and *Sullivan, supra,*

it has been clear that equitable relief and compensatory damages are available under § 1982 via 28 U.S.C. § 1343(4) and 42 U.S.C. § 1988. 42 U.S.C. § 1981 duplicates § 1982 in that neither makes any provision for relief. We know of no reason justifying different damage remedies under §§ 1981 and 1982. *Mizell v. North Broward Hospital District,* 427 F.2d 468, 472 (5th Cir. 1972). Since punitive damages are available under § 1982, *Seaton v. Sky Realty Co.,* 491 F.2d 634 (7th Cir. 1974), we conclude that § 1981 provides a separate and independent basis for our award of punitive damages. Johnson v. Railway Express, 421 U.S. 454, 460, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), *Cook v. Advertiser Co.,* 323 F.Supp. 1212, 1213 n. 3 (M. D.Ala.1971), *aff'd on other grounds,* 458 F.2d 1119 (5th Cir. 1972) and *Tramble v. Converters Ink Co.,* 343 F.Supp. 1350, 1354–55 (E.D.Ill.1972). Even if we assume *arguendo* that punitive damages are unavailable under Title VII, § 1981 was not preempted nor was it repealed by implication when the 1964 Civil Rights Act was passed. *Sanders v. Dobbs Houses, Inc.,* 431 F.2d 1097, 1100–01 (5th Cir. 1970), *cert. den.,* 401 U.S. 948, 91 S.Ct. 935, 28 L.Ed.2d 231 (1971). Accordingly, we must respectfully reject the result reached in *Howard v. Lockheed-Georgia,* 372 F.Supp. 854, 857–8 (N. D.Ga.1974), which modified § 1981 on the basis of Title VII. Title VII does not alter § 1981 even where there is a strong conflict between these two laws, *i. e.,* Title VII's EEOC conciliation requirement. *Hill v. Amercian Airlines,* 479 F.2d 1057, 1060 (5th Cir. 1973). A *fortiori* Title VII cannot be held to have eliminated punitive damages under § 1981 where Congress expressed no intent to do so.

Accordingly, we affirm our award of $50,000 in punitive damages on the basis of defendant ICRR's conduct as outlined in our findings of June 2, 1974, where we found that ICRR had acted with malice.