Barbara Z. PRESSEISEN, on behalf of herself and all others similarly situated

v.

SWARTHMORE COLLEGE, et al.

Civ. A. No. 74–1313.

United States District Court, E. D. Pennsylvania.

March 25, 1976.

Paula R. Markowitz, Philadelphia, Pa., for plaintiff.

Henry T. Reath, Philadelphia, Pa., for defendants.

## OPINION

BECHTLE, District Judge.

Plaintiff is a former Assistant Professor in the Education Program at Swarthmore College ("Swarthmore"). On February 29, 1972, plaintiff received notification from Swarthmore that she would not be reappointed as an Assistant Professor for the 1972–1973 academic year due to "logistical" considerations. After exhausting the appropriate administrative remedies, plaintiff, on May 28, 1974, commenced this action alleging that this nonrenewal was based solely on account of her sex, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. §§ 1981, 1983, 1985(3), and Pa.Const. art. 1, § 26. On December 11, 1974, plaintiff filed an amended complaint which deleted her claim under the Pennsylvania Constitution and added class action allegations. Specifically, on behalf of herself and others similarly situated, she now seeks declaratory and injunctive relief from Swarthmore's allegedly pervasive sexually discriminatory practices in hiring, recruitment, firing, promotion, wages, job assignments and other terms and conditions of

employment. Plaintiff also seeks, for herself and the proposed class, other equitable relief such as back pay, as well as compensatory and punitive damages.[1]

Presently before the Court are defendants' motion to dismiss, for failure to state a claim upon which relief can be granted, those allegations in plaintiff's amended complaint pertaining to 42 U.S.C. §§ 1981, 1983 and 1985(3), the individual defendants'[2] motion to dismiss the amended complaint's Title VII allegations for lack of subject matter jurisdiction,[3] and plaintiff's motion for declaration of a class action pursuant to either Fed.R.Civ.P. 23(b)(2) or (b)(3). For the reasons stated below, the Court will grant defendants' motion to dismiss with respect to 42 U.S.C. §§ 1981 and 1985(3) and deny it as to § 1983, grant the motion to dismiss the Title VII allegations as to individual defendants Friend, Lax and Brodhead only, and certify a class action pursuant to Rule 23(b)(2).

I. *42 U.S.C. § 1981*

 42 U.S.C. § 1981 provides in pertinent part that:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .

It is clear that the main thrust of § 1981 is to prohibit discrimination based upon race. Although some courts have interpreted it as also prohibiting discrimination based upon alienage, *see e. g., Guerra v. Manchester Terminal Corporation,* 498 F.2d 641, 653–654 (5th Cir. 1974); *Jones v. United Gas Improvement Corp.,* 68 F.R.D. 1, 10–12 (E.D.Pa.1975); *Troy v. Shell Oil Company,* 378 F.Supp. 1042, 1046 (E.D.Mich.1974), *appeal dismissed as moot,* 519 F.2d 403 (6th Cir. 1975), the courts have been virtually unanimous in their statements that sex discrimination claims are outside the parameters of § 1981. *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.,* 522 F.2d 1235, 1240 n.8 (7th Cir. 1975); *Raether v. Phillips,* 401 F.Supp. 1393, 1396 (W.D.Va.1975); *Jones v. United Gas Improvement Corp., supra,* 68 F.R.D. at 13 & n.11; *Rackin v. University of Pennsylvania,* 386 F.Supp. 992, 1008–1009 (E.D.Pa.1974); *O'Connell v. Teachers College,* 63 F.R.D. 638, 640 (S.D.N.Y.1974); *Troy v. Shell Oil Company, supra,* 378 F.Supp. at 1046; *League of Academic Women v. Regents of the University of California,* 343 F.Supp. 636, 638–640 (N.D. Cal.1972); *Braden v. University of Pittsburgh,* 343 F.Supp. 836, 837–838 (W.D.Pa. 1972), *vacated on other grounds,* 477 F.2d 1 (3d Cir. 1973); *Fitzgerald v. United Methodist Community Center,* 335 F.Supp. 965, 966 (D.Neb.1972). We agree with this view. Accordingly, defendants motion to dismiss the amended complaint's § 1981 allegations will be granted.

II. *42 U.S.C. § 1985(3)*

 42 U.S.C. § 1985(3) provides a damage remedy to one who is injured by a conspiracy entered into "for the purpose of depriving, either directly or indirectly, any

---

1. A complete statement of the facts is contained at 386 F.Supp. 1337 (E.D.Pa.1974).

2. The four individual defendants are (1) Theodore Friend, President of Swarthmore, (2) Stephen G. Lax, Chairman of the Board of Managers for Swarthmore, (3) Charles E. Gilbert, Chairman of the Committee on Teacher Education, and (4) Alice K. Brodhead, Director of the Program in Education.

3. In our previous Memorandum, this Court held that the Title VII allegations contained in the original complaint stated a claim upon which relief could be granted with respect to

defendant Swarthmore, and that we had subject matter jurisdiction under 42 U.S.C. § 2000e *et seq.* 386 F.Supp. at 1339–1341. We found it unnecessary at that time to rule on defendants' above-mentioned motions. *Id.* Although the amended complaint which is presently before us was filed subsequent to defendants' motions to dismiss, the Court will treat those motions as if they had been filed subsequent to the filing of the amended complaint. Accordingly, the Court will examine the amended complaint in ruling upon defendants' remaining motions to dismiss.

person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ."
In order to state a cause of action under § 1985(3), it is essential that a complaint allege that the defendants *conspired* to deprive the plaintiff, or the class of persons whom the plaintiff seeks to represent, of the equal protection of the laws, or of equal privileges and immunities under the laws. *Griffin v. Breckenridge,* 403 U.S. 88, 102–103, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338, 348 (1971). Plaintiff's amended complaint does not allege a conspiracy by defendants and for that reason alone the § 1985(3) cause of action must be dismissed. *See Ammlung v. City of Chester,* 355 F.Supp. 1300, 1304–1305 (E.D.Pa.1973), *aff'd,* 494 F.2d 811 (3d Cir. 1974). Even assuming that the amended complaint had alleged a conspiracy by defendants, it would still be deficient.[4] There are no specific factual averments concerning the membership, formulation, or purpose of the alleged conspiracy, as well as of acts carried out in furtherance of the conspiracy, to support such an allegation. As stated by this Court in *Everett v. City of Chester,* 391 F.Supp. 26, 29 (E.D.Pa.1975): "Conclusory claims of conspiracy unsupported by factual allegations regarding an agreement are insufficient to establish a § 1985(3) claim." (Citations omitted.) *Accord, Blackburn v. Fisk University,* 443 F.2d 121, 124 (6th Cir. 1971); *State of Louisiana ex rel. Purkey v. Ciolino,* 393 F.Supp. 102, 109 (E.D.La.1975); *Scott v. University of Delaware,* 385 F.Supp. 937, 944 (D.Del. 1974). Accordingly, plaintiff's § 1985(3) cause of action will be dismissed.[5]

4. The Court notes that the original complaint did allege that defendants conspired to deprive plaintiff of the equal protection of the laws. *See* Complaint, paragraphs 25–31. Inexplicably, all references to a "conspiracy" by defendants were omitted from the amended complaint.

5. Had plaintiff properly stated a cause of action, there would remain the serious question of whether officials of a single corporation can conspire with one another. *Compare Cole v. University of Hartford,* 391 F.Supp. 888, 891–894 (D.Conn.1975), *with Rackin v. University*

### III. *42 U.S.C. § 1983*

### A. *Color of State Law*

With regard to the § 1983 allegations, defendants seek dismissal on the ground that they were not acting under color of state law within the meaning of that section.[6] Plaintiff alleges in the amended complaint that Swarthmore is "intertwined with the governmental policies of the Commonwealth of Pennsylvania." Specifically, that Swarthmore operates by virtue of the Commonwealth's grant of permission via its licensing procedures, and that Swarthmore receives financial advantages from the Commonwealth including, but not limited to, exemptions from tax liability. Although the above allegations lack specificity, the Court is constrained to conclude that they are sufficient to preclude a dismissal of the § 1983 cause of action at this time. In accordance with the Third Circuit's admonition in *Braden v. University of Pittsburgh,* 477 F.2d 1 (3d Cir. 1973), the Court must allow discovery to proceed on this "state action" issue, and then hold an evidentiary hearing, before we can properly decide whether Swarthmore's relationship with the Commonwealth is so pervasive that it can be said to be acting under color of state law. See *Weise v. Syracuse University,* 522 F.2d 397, 408 (2d Cir. 1975); *Rackin v. University of Pennsylvania, supra,* 386 F.Supp. at 995; *Pendrell v. Chatham College,* 370 F.Supp. 494, 496 (W.D.Pa.1974). Similarly, the question of whether or not the individual defendants are amenable to suit under plaintiff's § 1983 allegations must also await the *Braden* evidentiary hearing, as such a finding

*of Pennsylvania, supra,* 386 F.Supp. at 1005–1006.

6. 42 U.S.C. § 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

in large part depends upon whether Swarthmore was acting under color of state law. *See Johnson v. University of Pittsburgh,* 359 F.Supp. 1002, 1005 (W.D.Pa. 1973).

**B.** *Applicable Statute of Limitations*

■ Defendants contend that, even assuming plaintiff makes out a § 1983 cause of action, it is barred by the applicable Pennsylvania statute of limitations.[7] Since there is no federal statute of limitations for actions brought under 42 U.S.C. § 1983, the appropriate period must be determined by reference to state law. *See Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295, 302 (1975). An examination of Pennsylvania law reveals no statute of limitations of general applicability to alleged violations of constitutional rights. Thus, "the limitation to be applied is that which would be applicable in the courts of the state in which the federal court is sitting had an action seeking similar relief been brought under state law." *Polite v. Diehl,* 507 F.2d 119, 122 (3d Cir. 1974) (en banc) (citation omitted). *See Ammlung v. City of Chester,* 494 F.2d 811, 814 (3d Cir. 1974).

It has been held in this district that employment discrimination cases brought under 42 U.S.C. § 1981 are governed by Pennsylvania's six-year statute of limitations, 12 P.S. § 31. *Dudley v. Textron, Inc., Burkart-Randall Division,* 386 F.Supp. 602, 606–607 (E.D.Pa.1974); *Jones v. United Gas Improvement Corporation,* 383 F.Supp. 420, 428–432 (E.D.Pa.1974). The rationale of those cases is that employment discrimination cases are most closely analogous to state actions based upon contract, or a tortious interference with contractual relations, both of which are covered by Pennsylvania's general six-year statute of limitations. *Id.* at 431.

On the other hand, the district courts of the Western District of Pennsylvania have held that § 1981 employment discrimination cases are most closely analogous to personal injury actions, which are governed by Pennsylvania's two-year statute of limitations, 12 P.S. § 34. *Davis v. United States Steel Supply,* 405 F.Supp. 394, 395–396 (W.D.Pa. 1976); *Wilson v. Sharon Steel Corporation,* 399 F.Supp. 403, 408 (W.D.Pa.1975). *Compare Holden v. Boston Housing Authority,* 400 F.Supp. 399, 400–402 (D.Mass.1975). Essentially, those cases hold that allegations of employment discrimination clearly sound in tort, *i. e.,* "tortious interference with a basic statutory right, the right to equality of treatment in employment." *Wilson v. Sharon Steel Corporation, supra,* 399 F.Supp. at 408.

■ This Court is of the view that plaintiff's cause of action, although tangentially related to contract rights, is more clearly in the nature of a personal injury action. Since plaintiff seeks to protect the identical interests that were asserted in *Davis* and *Wilson,* no significant reason exists to justify differentiating between § 1981 and § 1983 for limitation purposes. Accordingly, the two-year limitation period is applicable in the instant case.

■ Plaintiff's original judicial complaint was filed on May 28, 1974. As we found in our previous Memorandum, plaintiff was allegedly discriminated against by Swarthmore subsequent to May 28, 1972. 386 F.Supp. at 1339–1340. Therefore, plaintiff is not time barred from pursuing her § 1983 claims.

**IV.** *Title VII Claims*

■ The four individual defendants seek to dismiss the Title VII allegations because they were not named in plaintiff's November 27, 1972, charge filed with the Equal Employment Opportunity Commission ("EEOC"). 42 U.S.C. § 2000e–5(f)(1) (Supp. II, 1972) provides, *inter alia,* that a

---

**7.** The defendants contend that the relevant state statutes of limitations are: (1) 43 P.S. § 959 (Supp.1975) (complaint must be filed with Pennsylvania Human Relations Commission within 90 days after the alleged act of discrimination); (2) 43 P.S. § 336.5 (Supp.1975) (equal pay violation, two-year limitation period); (3) 12 P.S. § 31 (slander, one-year limitation period).

civil action may only be brought against employers and employees that are "named in the charge." This has been interpreted as a jurisdictional prerequisite and, as such, an employer or employee may not be named as a defendant in a civil action unless they have been the subject of a prior charge before the EEOC. *Equal Employment Opportunity Commission v. MacMillan Bloedel Containers, Inc.,* 503 F.2d 1086, 1092 (6th Cir. 1974); *Evans v. Sheraton Park Hotel,* 164 U.S.App.D.C. 86, 503 F.2d 177, 181 (1974); *Jackson v. University of Pittsburgh,* 405 F.Supp. 607, 613–618 (W.D.Pa.1975); *Scott v. University of 'Delaware, supra,* 385 F.Supp. at 940–942. The reasons advanced for this charging requirement are that "it notifies the charged party of the asserted violation" and that "it brings the charged party before the EEOC and permits effectuation of the Act's primary goal, the securing of voluntary compliance with the law." *Bowe v. Colgate-Palmolive Company,* 416 F.2d 711, 719 (7th Cir. 1969).

 Defendants Friend, Lax and Brodhead were not named in plaintiff's November 27 charge. The Title VII allegations must, therefore, be dismissed as to them. However, the charge specifically stated that defendant "Mr. Charles Gilbert acting in the name of the College," along with Swarthmore College, were the employer and party who discriminated against plaintiff. As such, Gilbert must have known or should have known of the EEOC proceeding and that his conduct might have been the subject of an EEOC inquiry.[8] Ac-

cordingly, Mr. Gilbert's motion to dismiss the Title VII allegations will be denied.

## V. *Class Action Certification*

### A. *General Requirements*

A suit may be maintained as a class action if it appears that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of both law and fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). In addition to satisfying the requirements of Rule 23(a), a court must find that the action is properly maintainable under one of the three subdivisions of Rule 23(b). Plaintiff, in the instant case, seeks certification either under 23(b)(2) or under 23(b)(3). The former requires a court to find that the party opposing the class has acted or refused to act on grounds generally applicable to the class, thus making appropriate injunctive or corresponding declaratory relief with respect to the entire class. The latter requires a finding that questions of both law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

 Although the exact size of the proposed class in this case cannot be determined at this time, discovery to date indi-

---

8. Gilbert also argues that he was not properly charged before the EEOC because he was not named in the complaint filed with the Pennsylvania Human Relations Commission ("PHRC"). (*See* Exhibit B attached to defendants Memorandum Brief Supporting Defendants' Motion to Dismiss.) We reject this contention. 42 U.S.C. § 2000e–5(c) (Supp. II, 1972) only prohibits an aggrieved person from filing a charge with the EEOC "before the expiration of sixty days after proceedings have been commenced under the State or local law . . .." We previously held that plaintiff timely filed her complaint with the PHRC in accordance with 43 P.S. § 959 (Supp.1975). 386 F.Supp. 1340–1341. The fact that Gilbert was not named in the PHRC complaint does not mean that that

complaint was not properly commenced. Section 959 requires, in part, that:

> Any individual claiming to be aggrieved by an alleged unlawful discriminatory practice may make, sign and file with the [PHRC] a verified complaint, in writing, which shall state the name and address of the person, employer, labor organization or employment agency alleged to have committed the unlawful discriminatory practice complained of, and which shall set forth the particulars thereof and contain such other information as may be required by the [PHRC].

In accordance with this directive, plaintiff named "Swarthmore College" as the "Respondent" in the PHRC complaint.

cates that the number is at least in the hundreds. Thus, the class is so numerous that joinder of all members is impracticable.

■ With respect to the commonality and typicality requirements, there is ample authority holding that where an "across the board" or permeating policy of discrimination is alleged, both requirements are satisfied. The chief catalyst for such precedent was the Fifth Circuit's decision in *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122 (5th Cir. 1969). In that case, the district court had held that a discharged black employee could represent only other discharged black employees. The Fifth Circuit reversed, holding that the plaintiff's allegation of racial discrimination was common not only to the claims of discharged employees, but also to the claims of the defendant's other black employees who alleged discrimination in hiring, firing, promotion and maintenance of facilities. The court reasoned that, even though the factual circumstances surrounding the employment decisions for each class member might vary, the alleged underlying policy of racial discrimination was sufficiently common to and typical of the claims of all members of the class as to permit joinder of all such claims in a class action suit. *Id.* at 1124. The Fifth Circuit continues to adhere to this "across the board" approach in Title VII employment discrimination cases. *See, e. g., Long v. Sapp,* 502 F.2d 34 (5th Cir. 1974); *Jack v. American Linen Supply Company,* 498 F.2d 122 (5th Cir. 1974).

Other circuit courts faced with this issue have effectively adopted the "across the board" approach. For example, in *Barnett v. W. T. Grant Company,* 518 F.2d 543 (4th Cir. 1975), the Fourth Circuit held that a present black employee, who had allegedly been denied a promotion for racially discriminatory reasons, could represent other black persons allegedly affected by other racially discriminatory employment practices. Since the plaintiff's suit was an " 'across the board' attack on all discriminatory actions by defendants on the ground of race," the court viewed it as meeting the requirement of Rule 23(b)(2). *Id.* at 547, *citing Johnson, supra,* 417 F.2d at 1124. The Fourth Circuit's citation to *Johnson* at 1124 (*see* discussion above) demonstrates its belief that the "across the board" attack fulfilled the preliminary requirements of Rule 23(a)(2) and (3), as well as those of 23(b)(2). Similarly, in *Rich v. Martin Marietta Corporation,* 522 F.2d 333 (10th Cir. 1975), the district court had narrowed the class to four subclasses which reflected the job descriptions of the named plaintiffs, each of which failed to satisfy the Rule 23(a)(1) numerosity requirement. The Tenth Circuit reversed, holding that the plaintiffs could represent all employees allegedly discriminated against because they were female, black or Spanish-American, without limitation as to job description, thereby satisfying the numerosity requirement as well as implicitly satisfying the commonality and typicality requirements. *Id.* at 340–341.[9] Finally, the Third Circuit,

---

**9.** The Court is not unmindful of the Tenth Circuit's recent decision in *Taylor v. Safeway Stores, Incorporated,* 524 F.2d 263 (10th Cir. 1975). In that case, the plaintiff sought to represent all past, present and future black employees of the defendant in all its wholesale, retail and distribution centers throughout Colorado. The district court held that such a class did not meet the 23(a)(3) typicality requirement, which *White v. Gates Rubber Company,* 53 F.R.D. 412 (D.Colo.1971), held requires a plaintiff "to demonstrate that other members of the class he purports to represent have suffered the same grievances of which he complains." *Id.* at 415. Accordingly, the district court narrowed the class to black employees located at the defendant's frozen food ware-

house, where the plaintiff was actually employed. The court of appeals affirmed, holding that Rule 23(a)(3) required the plaintiff to either "show the existence of any discriminatory employment practices by [defendant] outside the frozen food warehouse or the existence of any similarly aggrieved . . . employee outside the warehouse." 524 F.2d at 270. In so holding, the court noted that its ruling was "not contra" to the decision in the *Rich* case, but simply required that the representative plaintiff must now prove the existence of a class with similar claims. *Id.* at 271 n.8.

The *Taylor* court's somewhat novel approach to Rule 23(a)(3)'s typicality requirement does not affect this Court's finding as to typicality in this case for two reasons. First, the *Taylor*

in *Wetzel v. Liberty Mutual Insurance Company,* 508 F.2d 239 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975), held that two former female "technical" employees of defendant's claims department, who alleged that the defendant's hiring and promotional policies and its pregnancy-related policies as to female technical employees violated Title VII, could properly represent all former, present and future female technical employees of the defendant. Even though the defendant made numerous attacks on the district court's determination that the requirements of Rule 23(a) had been met, the court found it necessary, "[a]fter careful consideration of [defendant's] contentions," to discuss only the Rule 23(a)(1) and (a)(4) requirements of numerosity and adequate representation. 508 F.2d at 246. Thus, the court apparently agreed with the determination of the district court that the plaintiffs' allegations of sex discrimination satisfied Rule 23(a)(2) and (3)'s commonality and typicality requirements. *Accord, Senter v. General Motors Corp.,* 532 F.2d 511 (6th Cir. 1976).

■ With respect to district court decisions, an overwhelming majority have adopted the "across the board" approach, including the courts in this district. *See Jones v. United Gas Improvement Corp.,* 68 F.R.D. 1 (E.D.Pa.1975); *Ruhe v. The Philadelphia Inquirer,* Civil No. 72–2423 (E.D. Pa., filed Feb. 11, 1975); *Williams v. Local No. 19, Sheet Metal Workers International Association,* 59 F.R.D. 49 (E.D.Pa.1973);

*Mack v. General Electric Company,* 329 F.Supp. 72 (E.D.Pa.1971). We too shall follow that approach.[10]

Defendants vigorously contend, however, that the "across the board" approach is not proper in cases where subjective criteria play a substantial role in the decisional process. In other words, because employment decisions concerning each faculty member at Swarthmore are based upon a myriad of subjective factors, it is impossible to satisfy the commonality and typicality requirements. We reject this argument for two reasons.

■ The primary reason is that such an argument mistakenly focuses the inquiry onto what is simply a defense to the underlying claim of unlawful discrimination. Rule 23(a), however, does not suggest that possible defenses to the allegations of the complaint are to be considered when determining the appropriateness of a class action. Rather, whether the elements of Rule 23(a) are satisfied is to be judged solely by a consideration of the allegations of the complaint and the composition of the proposed class. The fact that defendants may have a valid defense to the allegations of sex discrimination in no way negates the findings that those allegations raise questions of law or fact common to the class and that plaintiff's claims are typical of the claims of the other class members.

The cases which have dealt with this "subjective defense" argument have, for the most part, struck it down. For example, in *Rich v. Martin Marietta Corporation,*

court appeared to be primarily concerned with a plaintiff seeking to represent other persons who are employed at locations other than where the plaintiff is located. In the instant case, plaintiff does not seek to represent all faculty at small liberal arts colleges throughout the country, but only those connected with Swarthmore, where plaintiff was formerly employed. Second, this Court cannot agree with *Taylor's* requirement that a plaintiff prove the existence of a class with similar claims via affidavit, other charges filed with the EEOC or other means. We discern no such requirement in the language of Rule 23(a)(3) nor do we believe it appropriate to impose one.

**10.** While we adopt this approach here, this Court does not believe that a class action must

be certified in every employment discrimination case where a plaintiff simply *alleges* a pervasive pattern of discrimination by a defendant. A court may allow, as was done in this case, limited discovery with respect to the class action issue prior to the Rule 23(c)(1) hearing. If that discovery reveals that the "across the board" allegations are plainly insubstantial or frivolous, which is not the case here, then a court can properly prohibit the case from proceeding as a class action. *See Ruhe v. The Philadelphia Inquirer, supra* at 8 n.7; *Kohn v. Royall, Koegel & Wells,* 59 F.R.D. 515, 522 (S.D.N.Y.1973), *appeal dismissed,* 496 F.2d 1094 (2d Cir. 1974).

*supra,* the court was not troubled by the fact that one of the plaintiffs was an engineer who was challenging the defendant's failure to promote her, although the promotion allegedly involved subjective criteria such as output, dependability and reliability. 522 F.2d at 338. The court in *Barnett v. W. T. Grant Company, supra,* 518 F.2d at 547, specifically allowed the plaintiff to represent "employees of [defendant] who had been or in the future would be denied promotion to supervisory positions because of the company's nonobjective selection standards for supervisors." With respect to the university setting, the courts have also rejected this argument. *Scott v. University of Delaware,* 68 F.R.D. 606 (D.Del.1975); *Gilinsky v. Columbia University,* 62 F.R.D. 178 (S.D.N.Y.1974). *See Taliaferro v. State Council of Higher Education,* 372 F.Supp. 1378 (E.D.Va.1974).[11] Finally, in *Kohn v. Royall, Koegel & Wells,* 59 F.R.D. 515 (S.D.N.Y.1973), *appeal dismissed,* 496 F.2d 1094 (2d Cir. 1974), the court certified a class of approximately 500 women law students and graduates of leading law schools to redress allegedly discriminatory hiring practices by a law firm. In finding that the commonality requirement had been satisfied notwithstanding the "subjective defense," the court succinctly stated:

> The common question in both professional and nonprofessional employment situations is not whether one individual is better qualified than another, but whether that individual is considered less qualified, not because of his or her own worth, but because of discrimination forbidden by Title VII. Put another way, although a [defendant] is undoubtedly free to make complex, subjective judgments as to how impressive an applicant is, it is not free to inject into the selection process

the *a priori* assumption that, as a whole, women are less acceptable professionally than men.

59 F.R.D. at 521 (citation omitted). *See Ruhe v. The Philadelphia Inquirer, supra* at 10–11.

Secondly, defendants' argument assumes that, in order for plaintiff to be successful on the class claim, the Court must be presented with particularized evidence of each alleged discriminatory act against a class member. This is an invalid assumption. As noted by the court in *Johnson v. University of Pittsburgh,* 359 F.Supp. 1002, 1007–1008 (W.D.Pa.1973):

> It is obvious that in a case of sex discrimination, as in a case of race discrimination, we very seldom find a resolution of a board of directors or a faculty committee agreeing to engage in sex discrimination any more than we would expect to find the same in a conspiracy to violate the antitrust laws. The existence of such discrimination must therefore be found from circumstantial evidence and inferences from the circumstances.

Class based discrimination by defendants may be proved by statistics and/or numerous cases of individual discrimination, as well as other circumstantial evidence. The members of the class need not individually prove each instance of discrimination allegedly perpetrated upon them, insofar as the question of liability is concerned. *See United States v. United States Steel Corporation,* 520 F.2d 1043, 1053–54 (5th Cir. 1975); *Baxter v. Savannah Sugar Refining Corporation,* 495 F.2d 437, 443–444 (5th Cir.), *cert. denied,* 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1974); *Martinez v. Bechtel Corp.,* 11 FEP Cases 898, 904 (N.D. Cal. Nov. 18, 1975). In other words, the advantages of a finding of liability, with

11. Defendants citation to *O'Connell v. Teachers College,* 63 F.R.D. 638 (S.D.N.Y.1974), does not persuade this Court to hold otherwise. In *O'Connell,* the plaintiff alleged she was refused employment by the Columbia Teachers College as an assistant professor due to sex discrimination. In seeking class action certification, the plaintiff alleged a pattern of discrimination against women in the hiring and promotion practices at the College. The court declined to certify the class under either Rule 23(b)(2) or (b)(3) because the class claims "would necessarily involve trials of the individual issues regarding the particular employment or promotion problem." *Id.* at 640. As mentioned above, such an analysis improperly focuses on the defendant's defense rather than on the *class* claims, as is required in ruling upon a motion for class action certification.

corresponding declaratory and injunctive relief, will inure to the class members regardless of their individual circumstances. It is only when the Court determines defendants' liability for back pay that those circumstances may possibly become important. That possibility does not preclude a finding that the commonality and typicality requirements are satisfied at least as to defendants' general liability. (*See* bifurcation discussion, part V.B., *infra.*) Accordingly, we hold that the requirements of Rule 23(a)(2) and (3) have been met.

The traditional criteria by which to assess the adequacy of a plaintiff's representation under 23(a)(4) are: (1) the plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation; and (2) the plaintiff must not have interests that are antagonistic to those of the class. *Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532, 542 (1975); *Wetzel v. Liberty Mutual Insurance Company, supra,* 508 F.2d at 559; *Manning v. Princeton Consumer Discount Company, Inc.,* 390 F.Supp. 320, 324 (E.D. Pa.1975); *Dolgow v. Anderson,* 43 F.R.D. 472, 494 (E.D.N.Y.1968). The fact that plaintiff seeks to remedy alleged sexually discriminatory practices at Swarthmore is undoubtedly coextensive with the interests of the class as a whole. There is no reason why any member of the class would be in favor of such practices. The Court also finds that plaintiff's counsel is experienced in litigation similar to the present case and will ably pursue this matter. Thus, the requirement of Rule 23(a)(4) is satisfied.

Since the requirements of Rule 23(a) have been satisfied, we must now decide whether the class action will be maintained under Rule 23(b)(2) or (b)(3). A (b)(2) class action is maintainable when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The Third Circuit found in *Wetzel, supra,* 508 F.2d at 250, that:

[A] Title VII action is particularly fit for (b)(2) treatment, and the drafters of Rule 23 specifically contemplated that suits against discriminatory hiring and promotion policies would be appropriately maintained under (b)(2). [Advisory Committee's Note to Proposed Amendments to Rule 23, 39 F.R.D. 69, 102 (1966).]

In addition, the *Wetzel* court held that, although a plaintiff and members of the class may seek damages in the form of back pay as well as other equitable relief, this does not preclude the maintenance of a (b)(2) class action.[12] *Id.* at 251. *See Rich v.*

---

**12.** Defendants contend that since plaintiff, on behalf of herself and the class, is seeking compensatory damages for mental distress as well as punitive damages, the suit is exclusively or predominantly for money damages, thereby precluding (b)(2) treatment. If such damages were recoverable in a Title VII suit, we would agree with defendants' arguments and deny (b)(2) certification. However, for the reasons stated below such damages are not recoverable.

42 U.S.C. § 2000e–5(g) (Supp. II, 1972) reads in pertinent part:

If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate.

The courts which have faced the issue of whether compensatory and punitive damages are available under this section have reached different conclusions. Some courts have held such damages not to be recoverable, *Equal Employment Opportunity Commission v. Detroit Edison Company,* 515 F.2d 301 (6th Cir.), *petition for cert. filed,* 44 U.S.L.W. 3214 (U.S. Sept. 12, 1975) (No. 75–393) (denying punitive damages); *Tooles v. Kellogg Company,* 336 F.Supp. 14 (D.Neb.1972) (denying compensatory damages); *Whitney v. Greater New York Corporation of Seventh-Day Adventists,* 401 F.Supp. 1363 (S.D.N.Y.1975); *Loo v. Gerarge,* 374 F.Supp. 1338 (D.Hawaii 1974); *Howard v. Lockheed-Georgia Co.,* 372 F.Supp. 854 (N.D. Ga.1974); *Van Hoomissen v. Xerox Corporation,* 368 F.Supp. 829 (N.D.Cal.1973), *appeal dismissed,* 497 F.2d 180 (9th Cir. 1974) (deny-

*Martin Marietta Corporation, supra,* 522 F.2d at 341; *Pettway v. American Cast Iron Pipe Company,* 494 F.2d 211, 257 (5th Cir. 1974); *Head v. Timken Roller Bearing Company,* 486 F.2d 870, 876 (6th Cir. 1973); *Robinson v. Lorillard Corporation,* 444 F.2d 791, 801–802 (4th Cir.), *petition for cert. dismissed,* 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971); *Bowe v. Colgate-Palmolive Company, supra,* 416 F.2d at 720.

Defendants contend, however, that in order for a class action to be properly maintained under (b)(2), each member of the class must have the same cause of action, *i. e., identical* fact situations. They rely heavily on language in *Wetzel* to the effect that a (b)(2) class by its very nature must be "cohesive" and "homogeneous," thereby making it proper for all class members to be bound by a judgment without notice. Defendants then posit that since numerous subjective factors enter into each employment decision in question here, the required "cohesiveness" and "homogeneity" is destroyed. The flaw in defendants' argument is the same one which arose during the discussion of Rules 23(a)(2) and (3); it improperly focuses upon their anticipated defense to the alleged discriminatory practices. More importantly, the *Wetzel* court did not find that the class was "cohesive" and "homogeneous" because the defendant used *only* objective criteria in its employment decisions. Rather, the court focused in on that all-important ingredient which is as equally present in the case at hand—sexual discrimination.

[A] Title VII suit against discriminatory hiring and promotion policies is *necessarily* a suit to end discrimination because of a common class characteristic, in this case sex. The conduct of the employer is actionable "on grounds generally applicable to the class," and the relief sought is "relief with respect to the class as a whole." The class, all sharing a common characteristic subjected to discrimination, is cohesive as to the claims alleged in the complaint.

508 F.2d at 250 (citations omitted) (emphasis added). *See Jones v. United Gas Improvement Corp., supra,* 68 F.R.D. at 22.

In addition, the practical effect of defendants' argument would be to insulate all businesses and academic institutions from

---

ing compensatory and punitive damages), while other courts have allowed recovery. *Humphrey v. Southwestern Portland Cement Company,* 369 F.Supp. 832 (W.D.Tex.1973), *rev'd on other grounds,* 488 F.2d 691 (5th Cir. 1974) (granting compensatory damages); *Clairborne v. Illinois Central Railroad,* 401 F.Supp. 1022 (E.D.La.1975); *Tooles v. Kellogg Company, supra* (granting punitive damages).

This Court is in complete agreement with the exhaustive analysis of Chief Judge Carter in *Van Hoomissen v. Xerox Corporation, supra,* and we will not repeat it in full here. Suffice it to say that § 2000e–5(g) is quite specific in the remedies it provides—namely, equitable remedies. Had Congress intended to provide for compensatory damages for mental distress as well as punitive damages, it would have so stated.

We do not think that the Third Circuit's decision in *Rosen v. Public Service Electric and Gas Company,* 477 F.2d 90 (3d Cir. 1973), compels us to hold otherwise. In that case, the plaintiffs argued that they should have been awarded "compensatory damages" in the form of back pension benefits which had been denied to them because of a discriminatory pension plan. The court agreed with the plaintiffs, noting that the "relief is intended to restore those wronged to their rightful economic status absent the effects of the unlawful discrimination," *id.* at 96 (citation omitted), and that it was invoking "equitable powers under the Act to bring one group of employees up to the economic level of another." *Id.* It is clear that the *Rosen* court was not authorizing compensatory damages of the type sought in the instant case, but only damages for *economic* harm caused by unlawful employment practices. In other words, the back pension benefits are merely another form of back pay, which is specifically provided for in § 2000e–5(g). *See Albemarle Paper Company v. Moody,* 422 U.S. 405, 414 n.8, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280, 294 (1975); *Burt v. Board of Trustees of Edgefield County School District,* 521 F.2d 1201, 1208 (4th Cir. 1975); *Whitney v. Greater New York Corporation of Seventh-Day Adventists, supra,* 401 F.Supp. at 1370 & n.6; *Loo v. Gerarge,* 374 F.Supp. at 1342 n.7.

Accordingly, plaintiff and the members of the class cannot recover punitive damages or compensatory damages for mental distress under Title VII. However, this does not foreclose the possibility that such damages may be recoverable under 42 U.S.C. § 1983. *See* discussion, part III.A., *supra.*

class action suits so long as management or professional personnel are involved.[13] This Court does not wish to lend impetus to the process that will necessarily end in such a result. If defendants are, as alleged, discriminating against women in their employment hierarchy, they should not be allowed to do so with impunity. Their remedy is to succeed on the merits and not to block the legitimate airing of allegedly broad-based discriminatory employment practices. As stated by the court in *Martinez v. Bechtel Corp., supra,* 11 FEP Cases at 903:

> Title VII of the Civil Rights Act is remedial legislation and class action treatment should be liberally construed. [Citation omitted.] Moreover, it is at the upper management levels of employment where the remedial effect of Title VII is perhaps most sorely needed in order to fully rid our society of the threat of impermissible discrimination against minorities.

## B. *Bifurcation*

As mentioned above, if plaintiff succeeds on the liability aspect of the case, the Court may then have to examine some of the circumstances that are peculiar to the individual class members, such as whether a member was qualified for the particular position she applied for, in order to properly ascertain which members should be awarded back pay and in what amount. That prospect should not, however, preclude (b)(2) class actions in employment discrimination cases, particularly in light of the Supreme Court's strong support of back pay awards in Title VII cases. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). The solution is not to deny certification altogether, but to bifurcate the proceeding, to first establish

class liability and then, in light of that liability, to decide whether back pay claims should be certified under (b)(2) or (b)(3) or proceed as individual actions. Other courts have also found that it is appropriate to proceed in such a manner. *See Rich v. Martin Marietta Corporation, supra,* 522 F.2d at 341–342; *United States v. United States Steel Corporation, supra,* 520 F.2d at 1050–1051, 1052–1055; *Piva v. Xerox Corporation,* 70 F.R.D. 378 (N.D.Cal.1975).

Accordingly, the Court finds that this action satisfies the requirements of Rule 23(b)(2)[14] as to declaratory and injunctive relief and that the class will only be certified as to that relief at this time. We will defer a certification ruling on the monetary relief sought (in the form of back pay) until after a determination of liability.

## C. *Scope of the Class*

Plaintiff seeks to represent all present and future employees of Swarthmore, as well as all former employees and unsuccessful applicants since July 2, 1965, the effective date of the Civil Rights Act of 1964. The scope of this proposed class is impermissibly broad for two reasons. First, 42 U.S.C. § 2000e–5(e) (Supp. II, 1972) provides that where, as here, a charging party has instituted proceedings with a state agency which has jurisdiction over discriminatory employment practices, a charge *must* be filed with the EEOC within 300 days of the occurrence of the alleged unlawful practice. However, as noted by the *Wetzel* court:

> A plaintiff may bring a class action on behalf of those who have not filed charges with the EEOC. Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 719–720 (7th Cir. 1969); Oatis v. Crown Zellerbach

---

**13.** The Court notes that defendants' argument, carried to its logical limit, would bar almost every class action, even if nonmanagement and nonprofessional people are involved. This is due to the fact that most decisions to hire, be it a factory worker or a professor, as well as other employment decisions, require the utilization of subjective criteria by the hiring party. *See Senter v. General Motors Corp., supra,* 532 F.2d at 524.

**14.** It appears that this action could also be properly certified under 23(b)(3). We decline to so hold, as *Wetzel* instructs us that it is preferable to certify the class under (b)(2) in order to bind the members of the class with one conclusive adjudication. 508 F.2d at 252–253.

Corp., 398 F.2d 496, 499 (5th Cir. 1968). This tolls the statute of limitations for all members of the class. American Pipe & Construction Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). But [plaintiffs] *cannot represent those who could not have filed a charge with the EEOC at the time they filed their charges.* CWA v. New York Telephone Co., 8 F.E.P. 509, 513 (S.D.N.Y.1974); Culbert v. General Electric Co., 5 F.E.P. 969, 993 (E.D.Va.1973); Garneau v. Raytheon Co., 3 F.E.P. 1315 (D.Mass.1971).

508 F.2d at 246 (emphasis added).

Plaintiff's charge was filed with the EEOC on November 21, 1972. We must, therefore, exclude from the class those persons who could not have filed a charge with the EEOC on that day, *i. e.,* all employees who left the employ of Swarthmore, as well as all those who applied for employment and were rejected before January 26, 1972.

In a Title VII case not involving educational institutions, as in *Wetzel,* the inquiry would end there. However, prior to March 24, 1972, educational institutions were absolutely exempt from Title VII's coverage.[15] Unless the inclusive amendment is to be applied retroactively, the proper cutoff date for former employees and unsuccessful applicants is March 24, 1972, rather than January 26, 1972.

Plaintiff urges that we apply the amendment retroactively, relying on cases which have held that the lifting of the federal government's exemption from Title VII should be applied retroactively. *See Adams v. Brinegar,* 521 F.2d 129 (7th Cir. 1975); *Sperling v. United States,* 515 F.2d 465 (3d Cir. 1975), *petition for cert. filed,* 44 U.S. L.W. 3138 (U.S. Aug. 15, 1975) (No. 75–247); *Brown v. General Services Administration,* 507 F.2d 1300 (2d Cir. 1974), *cert. granted,* 421 U.S. 987, 95 S.Ct. 1989, 44 L.Ed.2d 476 (1975); *Womack v. Lynn,* 164 U.S.App.D.C. 198, 504 F.2d 267 (1974); *Koger v. Ball,* 497 F.2d 702 (4th Cir. 1974). Plaintiff's reliance on such cases is misplaced. First, these cases did not hold that the retroactive application should reach all the way back to July 2, 1965, the date the original statute became effective, but only to those cases pending administratively at the time the amendment became effective. *Sperling v. United States, supra,* 515 F.2d at 473–474. Second, prior to the amendment, unlike federal employees, employees of educational institutions had no alternative federal administrative remedy by which to pursue claims of discrimination. The Second Circuit, which recently held in *Weise v. Syracuse University,* 522 F.2d 397 (2d Cir. 1975), that the educational amendment was not to be given retroactive application, found such a distinction to be critical in distinguishing its previous decision in *Brown v. General Services Administration, supra.* The court reasoned:

> Prior to the 1972 amendments, Syracuse University was free, as far as Title VII was concerned, to discriminate in its employment practices. To hold that its actions during that period of exemption can now be the basis for the imposition of liability would be quite different from *Brown's* holding that a statute providing for judicial review of formerly unreviewable administrative proceedings is to be applied to such proceedings pending at the time of the statute's enactment. To put it another way, *Brown* gave retroactive application to a statute providing a new forum for the enforcement of preexisting rights; here we are asked to give retroactive effect to a statute creating new rights where none had previously existed. The manifest injustice of such *ex post facto* imposition of civil liability is reflected in the general rule of construction that absent clear legislative intent statutes altering substantive rights are

---

**15.** As originally enacted, Title VII exempted from its coverage, "an educational institution with respect to the employment of individuals to perform work connected with the educational activities of such institution." Pub.L. No. 88–352 § 702, 78 Stat. 255 (1964). *See* 42 U.S.C. § 2000e–1 (1970). This exemption was deleted, effective March 24, 1972, by § 3 of the Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, 86 Stat. 103 (1972). *See* 42 U.S.C. § 2000e–1 (Supp. II, 1972).

not to be applied retroactively. [Citations omitted.] In *Brown*, we reviewed the legislative history of the 1972 amendments regarding federal employees and concluded that Congress intended simply to create a new means for enforcement of preexisting rights—a purpose entirely consistent with the retroactive construction there adopted. Here, however, the intent was clear to impose new substantive requirements on educational institutions. *See* H.R.Rep. No. 92–238, 92d Cong., 2d Sess. (1972), *quoted at* 1972 U.S.Code Cong. & Admin.News, pp. 2137, 2154–55. We therefore hold that the 1972 amendments subjecting educational institutions to the requirements of Title VII are not to be applied retroactively.

*Id.* at 410–411 (footnotes omitted). *See Rackin v. University of Pennsylvania, supra*, 386 F.Supp. at 1006.

This Court finds Judge Smith's analysis to be persuasive and we will follow it. Accordingly, the class will include only those employees who left the employ of Swarthmore on or subsequent to March 24, 1972, and only those applicants for faculty positions who applied and were rejected on or subsequent to March 24, 1972.[16]

An appropriate Order will be entered.

---

16. Our holding as to nonretroactivity does not mean that evidence of pre-amendment discriminatory practices cannot be used in attempting to establish a pattern of post-amendment discriminatory practices. *See Weise v. Syracuse University, supra*, 522 F.2d at 411 n.24.